No. 54,236

HAND REALTY COMPANY, *Appellee,* v. TERRY F. MEYERS and BETTY L. MEYERS, *Appellants.*

(672 P.2d 583)

Opinion filed December 2, 1983.

*Thomas J. Berscheidt,* of Ward & Berscheidt, of Great Bend, argued the cause and was on the brief for the appellants.

*James L. Hargrove,* of McKay, McKay & Hargrove, of El Dorado, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This case is here on petition for review from an unpublished Court of Appeals decision of May 12, 1983. Appellee Hand Realty Company brought this action to recover a real estate commission for the sale of the appellants' residence. A jury verdict was returned in favor of Hand Realty and the appellants appealed. The Court of Appeals reversed. The appellee now asks review by this court. We reverse the Court of Appeals and affirm the trial court.

Tom Hand is the owner of Hand Realty Company in El

Dorado. He has been a real estate broker for eleven years. His wife, Fata Hand, also works in the agency as a salesperson.

Eric Olsen, a resident of El Dorado, was engaged to marry Jean Dawson. Ms. Dawson had three children from a previous marriage. In anticipation of their marriage Olsen was interested in purchasing a four-bedroom home.

Olsen's fiancee was due to visit El Dorado for two days around February 15, 1980. In planning for her visit Olsen asked the Hand Agency if they would show Ms. Dawson some four-bedroom homes for sale in El Dorado. Hand's agency had previously shown several of the same homes to Olsen and although he had not seen a home which he was interested in purchasing, he wanted Ms. Dawson to see what was available on the market while she was in El Dorado.

Tom Hand was acquainted with Terry and Betty Meyers and knew they owned a four-bedroom home. He was also aware Terry Meyers had recently acquired a business in Newton and was commuting from El Dorado to his job. Guessing the Meyers might eventually move to Newton, Hand called Terry Meyers on February 15, 1980, and informed him he had a prospect who might be interested in buying a four-bedroom home. He also advised him his client would be in town for only two days, and requested permission to show the Meyers' residence to her. After some discussion, Meyers agreed to permit Hand to show his house the following morning, February 16, 1980.

The substance of the phone conversation is critical to Hand's claim that Meyers listed the house with him. Hand testified Meyers asked how much he thought he could get for the house and Hand responded he thought it should bring $85,000. Meyers stated at that price he could not afford to pay a commission. Hand then suggested the price be set at $90,000. According to Hand, they then agreed the price would be $90,000. Hand testified he and Meyers also talked about when a sale could be completed because Meyers was concerned that any change in possession be postponed until after school was out for the summer. Meyers testified there was no discussion of paying a commission and that he told Hand several times he would have to clear $90,000 before he would consider selling the house. Meyers also stressed he and his family had not decided to move.

Fata Hand showed the Meyers' residence to Ms. Dawson on

the morning of February 16, 1980. Ms. Dawson was favorably impressed. On the same morning, however, a fellow employee advised Eric Olsen he thought the Meyers might be moving from El Dorado and that they owned a four-bedroom home. Olsen immediately telephoned Betty Meyers. She agreed he could look at the home the same morning. By coincidence, Ms. Dawson had been shown the home by Fata Hand several hours earlier. At the time he was shown the Meyers' home, Olsen was not aware Ms. Dawson had previously seen the house. After looking at the house Olsen immediately expressed an interest in purchasing it.

Later, during the same day, Olsen learned Ms. Dawson had also looked at the home with Fata Hand. Olsen and Dawson decided to try and purchase the home. Eric Olsen met with Terry and Betty Meyers on the evening of February 16, 1980. The terms and conditions of the sale were agreed upon. The sale price was $90,000. Olsen gave Meyers a down payment of $1,000. The parties prepared and signed a short, written agreement.

Olsen testified that during the meeting with Meyers, he expressed some concern about Hand Realty not being involved in the signing. Meyers assured him he would take care of Hand. Hand testified he first learned about the sale of the house a few days after it was shown to Jean Dawson when Meyers called him and offered to compensate him for the sale. Meyers stated he called Hand to avoid hard feelings but he did not intend to employ the Hand Agency to sell the house.

The jury awarded the appellee a verdict of $5,400, which is six percent of the sale price. The appellants appealed. The Court of Appeals reversed. This court granted review.

The issue here is the scope of appellate review where a jury verdict is attacked for insufficiency of the evidence.

"It has long been the rule that when a verdict is attacked for insufficiency of the evidence, 'the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below.' " *Cantrell v. R. D. Werner Co.,* 226 Kan. 681, 684, 602 P.2d 1326 (1979).

See also *Craig v. Hamilton,* 221 Kan. 311, 313, 559 P.2d 796 (1977).

In this case appellants argue there was no substantial competent evidence of either a contract of agency or that Hand Realty was the procuring cause of the sale of their home. Both of these are necessary in order for Hand Realty to prove it is entitled to a commission.

The relationship of a real estate broker and a seller is one of agency to which the general rules of a principal and agent apply. *Marcotte Realty & Auction, Inc. v. Schumacher*, 229 Kan. 252, 260, 624 P.2d 420 (1981). An agency relationship can result only from contract, express or implied, and in determining whether a valid contract has been entered into, the rules which pertain to contracts generally are applicable. There must be consideration, mutuality, and a meeting of the minds as to essential matters. The latter may be shown by implication from the conduct of the parties. The burden of establishing the agency is on the party asserting it. *Lindsley v. Forum Restaurants, Inc.*, 3 Kan. App. 2d 489, 491, 596 P.2d 1250, *rev. denied* 226 Kan. 792 (1979). Once the agency relationship is established, a broker seeking to recover a commission must also prove that he obtained a buyer who was ready, willing and able to meet the terms offered by the owner. *Winkelman v. Allen*, 214 Kan. 22, Syl. ¶ 2, 519 P.2d 1377 (1974). After meeting both of these burdens of proof the broker is entitled to recover.

The evidence in this case concerning the existence of a contract and Hand Realty's function as the procuring cause of the sale was in great dispute. Hand's testimony concerning Meyers' concern that the price of $85,000 would not provide enough profit to afford a commission implies an agreement to pay a commission. Additionally, the house was sold the evening after it was shown to the people Hand talked to the Meyers about, at the price agreed upon with Hand's advice and according to the terms suggested by Hand. This certainly provides circumstantial support for the alleged meeting of the minds on the essential matters. Also the testimony of Olsen, the buyer, concerning the statements by the Meyers that they would take care of Hand Realty indicated Meyers would pay Hand.

As to the amount of the commission owed under the contract, Hand testified he had earned $5,400. That amount went unchallenged and provides sufficient evidence to support the verdict. An instruction on quantum meruit was appropriate in the ab-

sence of an agreement on the commission; however, in this case it was unnecessary. The amount of commission earned was uncontroverted. Once the contract was established, the commission was, in effect, conceded. The trial court's response to the jury question was correct. Thus, there was substantial competent evidence to support the jury's verdict.

The judgment of the trial court is affirmed.