No. 56,148

EVELYN M. CORY, ADMINISTRATRIX OF THE ESTATE OF LEONARD CORY, DECEASED, AND EVELYN M. CORY, INDIVIDUALLY, *Plaintiff-Appellee,* v. THE BINKLEY COMPANY, A FOREIGN CORPORATION, *Defendant-Appellant,* and AETNA LIFE INSURANCE COMPANY, *Defendant-Appellee.*

(684 P.2d 1019)

Opinion filed July 13, 1984.

*Ross Wichman,* of Kent, Wichman and Anderson, of Hays, argued the cause and was on the briefs for defendant-appellant.

*Joseph W. Jeter,* of Jeter and Larson, of Hays, argued the cause and was on the brief for plaintiff-appellee.

*Glen R. Braun,* of Robert F. Glassman, P.A., of Hays, argued the cause and was on the brief for defendant-appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the Binkley Company, defendant-appellant, from a judgment entered on a jury verdict for $121,549.72 against it and in favor of the plaintiff-appellee, Evelyn M. Cory, administratrix of the estate of Leonard Cory, deceased, and Evelyn M. Cory, individually. The case was submitted to the jury on the theory of equitable estoppel. The verdict was for the precise amount of the medical bills incurred by Leonard Cory during his last illness. Binkley also appeals from a directed verdict granted in favor of defendant-appellee Aetna Life Insurance Company, its group health insurer. Binkley raises three issues on this appeal: whether Binkley owed Leonard Cory a duty to inform him of what would happen to his group health insurance when his job status changed; whether the trial court erred in granting Aetna a directed verdict; and whether

Binkley falsely represented or concealed material facts concerning Leonard Cory's health insurance or employment status.

In the early or mid-1960's, Leonard Cory began working for Wilbeck Manufacturing, a firm in Hutchinson, Kansas, that produced tillage equipment. He was employed as a salesman and received a salary, commission, travel expenses, and Blue Cross-Blue Shield health insurance. Cory's employment continued until 1977, when the Binkley Company bought Wilbeck Manufacturing. Cory was retained as a salaried salesman with Binkley and his benefits remained similar, with health insurance provided under a plan with Aetna Life Insurance Company. Starting in 1979, Cory was hospitalized on and off, and his health was obviously on the down-slope.

In the spring of 1981, Binkley's farm equipment business declined along with the general problems in the farm economy. One of the Binkley officials, Thomas DeBlase, said that Leonard Cory was not paying his way and told another official, Jay Wilbeck, to "terminate" Cory. However, both officials concluded that Cory could continue as a manufacturer's representative, an unsalaried independent contractor, in which capacity he could continue to sell the company's products and earn a higher rate of commission. Wilbeck testified that he told Cory of his "change in job status." He did not recall exactly the date of the conversation and nothing was said about health insurance. He testified that he "took the easy way out by saying no more than necessary, and assumed that all the other information that needed to be put together would come from either the personnel department at the Binkley Company [or] the insurance company." A "PE-2" form, a formal notice of termination, was prepared in the personnel department and was sent to the payroll department. A copy of such a form is usually sent to the employee to inform him or her of the termination. Mrs. Cory, however, was sure that her husband had never received a PE-2 notice of termination.

Mr. and Mrs. Cory knew that Mr. Cory was losing the salary and travel expenses, the company car, and a telephone credit card. They also knew that Mr. Cory would continue selling Binkley products and that his commission was to go from two percent to six percent. Mrs. Cory was worried about the medical insurance, although Mr. Cory assured her that he was still covered. She considered securing other insurance through her

beauty shop if the Aetna insurance through Binkley was no longer available.

The insurance plan booklet provided to Binkley employees specifically admonished the employees to call the Binkley personnel department if the employees had any questions about group insurance. Starting on May 29, 1981, Mrs. Cory called the Binkley Company five times, and finally, on June 3, 1981, she spoke to Karen Rotemeyer, an insurance clerk in Binkley's personnel department. Ms. Rotemeyer left the phone and pulled Mr. Cory's file, returned to the phone, and asked what Mrs. Cory wanted. Mrs. Cory responded that her husband's job status had changed as of June 1, and she needed to find out about the medical insurance. She told Ms. Rotemeyer that "with our track record, we cannot afford to be without it." Ms. Rotemeyer responded that as far as she could tell there was insurance. Mrs. Cory "wanted to know if we were covered and I still had coverage," and she also inquired about an old hospital bill for which she had not yet been reimbursed. The clerk told Mrs. Cory "not to worry," and to resubmit the old bill. Mrs. Cory testified that as a result of this telephone conversation, she believed that she had continuing coverage under the Aetna insurance plan.

Karen Rotemeyer testified that when she spoke to Mrs. Cory on June 3, she did not know that Mr. Cory had been terminated. She said that the discussion centered around *past* medical expenses and that Mrs. Cory did not ask her about *future* medical coverage. After the telephone conversation, she spoke to the personnel director and learned that Leonard Cory had been terminated. She had no further conversation with the plaintiff. Leonard Cory's employment as a "proprietary" or company salesman terminated on May 1, although the company record was made a few days later. Insurance premiums were deducted from Cory's May paycheck and his insurance coverage terminated on June 1. The Binkley Company notified Aetna that Leonard Cory's health insurance coverage ceased on June 1 due to the termination of his employment. According to the policy, an employee who is terminated has thirty-one days after termination to convert the group health insurance to an individual plan.

Leonard Cory was hospitalized in the Wesley Medical Center in Wichita from July 11 through September 24, 1981. From there

he went to a hospital in Hays. Early in his hospitalization, a family friend called the Binkley Company for Mrs. Cory and asked for insurance claim forms for Leonard. These were sent and claims were filed. Mrs. Cory later received from Binkley three "Explanation of Benefits" forms, dated September 1, September 21, and October 15, requesting "a completed attending physician's statement." On the September 21 form, Cheryl Dyer of the Binkley personnel department wrote a personal note asking Mrs. Cory to supply this information as soon as possible. On November 13, Mrs. Cory received a letter from Aetna saying that it would not pay any medical expenses incurred after June 1. Until she received that letter, Mrs. Cory did not know that her husband was not covered.

We turn now to the issues raised by the appellant, the first of which is whether Binkley owed Leonard Cory a duty to inform him of what would happen to his group health insurance when his "job status" changed. Binkley's argument on this point is that Cory was terminated on May 1; that his employee's insurance booklet clearly stated that insurance ended when employment terminated; and that he had thirty-one days after his termination as an employee to convert his group plan to an individual policy. Binkley argues that it notified Cory that his employment was being terminated; that he should have known that his insurance terminated; and that it had no duty to notify him beyond the information given to him in the insurance booklet.

The difficulty with this argument is that the case was not tried and was not submitted to the jury on the theory that Binkley had a duty to notify Cory that his insurance terminated and that Binkley was negligent in failing to perform that duty. It was tried and submitted to the jury on the theory of equitable estoppel. That theory is discussed in our recent case of *Iola State Bank v. Biggs*, 233 Kan. 450, 662 P.2d 563 (1983), where we said:

"Equitable estoppel is the effect of the voluntary conduct of the person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it has a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Cosgrove v. Young,* 230 Kan. 705, Syl. ¶ 6, 642 P.2d 75 (1981)." Syl. ¶ 4.

Plaintiff's theory and the theory upon which the case was

submitted to the jury was not that Binkley had a duty to notify Cory not only of the termination of his employment but also of the termination of his group health insurance, but that by the telephone conversation of June 3, 1981, Binkley represented and induced the Corys to believe that they were protected by the Aetna policy and that they would continue to be covered by it during Cory's employment as a manufacturer's sales representative. Mrs. Cory contended that she relied and acted upon this representation. Thus, whether or not Binkley had a *duty* to notify Cory of the termination of his group insurance is not a determinative question here where plaintiff's claim was made and submitted solely on the theory of equitable estoppel. The determinative issue was whether, through its agent, Binkley represented that Cory was covered when he was not, and whether Mr. and Mrs. Cory rightfully relied upon that representation to their detriment.

Next, Binkley contends that the trial court erred in granting a directed verdict to Aetna. The plaintiff initiated this action against both Binkley and Aetna. Binkley filed a cross-claim against Aetna in which it alleged that if Binkley "is held liable for any of the damages alleged by the plaintiff, it would be held liable solely due to the misrepresentation of Aetna . . . ." It then prayed that Aetna be held liable for any damages of plaintiff assessed to the Binkley Company. The pretrial order does not separately discuss the cross-claim of Binkley against Aetna, and does not list as an issue for trial misrepresentation by Aetna. The record of the trial does not disclose any evidence that Aetna made any misrepresentations to either Binkley or the plaintiff.

At the close of the evidence, Aetna moved for a directed verdict on all claims against Aetna. The trial court sustained that motion. As to plaintiff's claim against Aetna, plaintiff does not appeal or cross-appeal from the trial court's order directing a verdict upon her claim. The appeal here is by Binkley from the verdict and judgment, including the order of a directed verdict against Binkley on its cross-claim against Aetna.

In *Lemley v. Penner*, 230 Kan. 25, 630 P.2d 1086 (1981), we said:

"The standard for appellate review on motions for directed verdict is well established: All facts and inferences reasonably to be drawn from the evidence must be resolved in favor of the party against whom the ruling is sought and if the evidence is such that reasonable minds could reach different conclusions

thereon, the motion should be denied. *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. 532, 539, 618 P.2d 1195 (1980); *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, Syl. ¶ 5, 589 P.2d 599 (1979); *Frevele v. McAloon*, 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977); *Langhofer v. Reiss*, 5 Kan. App. 2d 573, 578, 620 P.2d 1173 (1980). Additional rules governing motions for directed verdict are stated in *CIT Financial Services, Inc. v. Gott*, 5 Kan. App. 2d 224, 231, 615 P.2d 774, *rev. denied* 228 Kan. 806 (1980):

'A motion for directed verdict may not be sustained unless the evidence is insufficient to support a verdict for the party against whom it is directed. (Citations omitted.) In considering a motion for a directed verdict on an issue of fact, the trial court should not weigh conflicting evidence or consider the preponderance thereof.' " 230 Kan. at 27.

Binkley does not argue that there were misrepresentations by Aetna, and we find none. Aetna's liability, if any, is therefore dependent upon the terms of the policy which it issued to its insured, the Binkley Company. Binkley executives and employees who testified at trial agreed that the Aetna policy covered all of the salaried and hourly employees of the Binkley Company, but that the policy did not cover manufacturer's representatives, independent salesmen who were compensated strictly on a commission basis. Cory was covered as long as he was a salaried employee. The change effected in May placed him in the latter classification—as an independent salesman, unsalaried, and compensated solely upon a commission basis. As such, he was not covered under the terms of the policy. Binkley notified Aetna that Leonard Cory was terminated from his employment and that his insurance terminated on June 1, 1981.

Binkley contends that the trial court did not rule as a matter of law that Binkley had not communicated and brought home to Leonard Cory the specific knowledge that his employment had been terminated. Thus, it contends that whether or not he was properly notified was an issue of fact, and if he was not properly notified, his rights under the group policy continued. In support of this claim, it cites *Emerick v. Connecticut General Life Ins. Co.*, 120 Conn. 60, 179 A. 335 (1935), 105 A.L.R. 413. That was a case in which the employee was temporarily laid off, but was not given a notification by his employer that he was being terminated. The Connecticut General Life Insurance Company had issued group life insurance to Pratt & Whitney, covering the lives of its employees. Emerick, a Pratt & Whitney employee, was temporarily laid off. Pratt & Whitney notified Connecticut General that Emerick was terminated, but it did not notify

Emerick. During the layoff, Emerick died. In an action by the employee's representative against the insurance carrier, the court held that "termination of employment" as used in the policy meant a termination of which the employee had knowledge or notice, and that the employee was entitled to notice that his employment was terminated before his insurance could be terminated, since otherwise the thirty-one-day conversion privilege would be of doubtful value. Pratt & Whitney, the employer, was not a party to the action, and no cross-claim by employer against insurer was involved.

Here, the cross-claim by Binkley against Aetna, with which we are concerned, was originally based upon Binkley's claim of misrepresentation by Aetna. As we noted earlier, that was not specified as an issue at pretrial and there was no evidence to support that claim at trial. Binkley, in defending against plaintiff's claim, contended it notified Cory of his termination. It claimed he was given oral notice of the termination by Jay Wilbeck, and that a copy of the PE-2 notice of termination was mailed to Cory. On appeal, it now contends that it did not notify Cory fully and completely of his termination and, therefore, Aetna should reimburse Binkley. We find this contention untenable. This position was not included in the pretrial order and was not pursued during trial. We hold that Binkley is not now entitled to maintain its cross-claim for reimbursement from Aetna on the basis that its notice to the employee was unclear and ineffective. Binkley notified Aetna that Cory was terminated and, insofar as its claim against Aetna is concerned, Binkley is bound by that notification. Aetna had the right to rely upon the notification from Binkley, its insured. See *Metropolitan Life Ins. Co. v. Thompson*, 203 Ark. 1103, 160 S.W.2d 852 (1942); *Beecey v. Travelers Ins. Co.*, 267 Mass. 135, 166 N.E. 571 (1929); and Annot., Termination of coverage under group policy with regard to termination of employment, 68 A.L.R.2d 8 § 93, p. 142.

This brings us to the final and controlling issue. Binkley contends that it did not falsely represent or conceal material facts concerning Leonard Cory's health insurance or employment status through either representation or conduct, including silence where there was a duty to speak. The question here is really whether there was substantial competent evidence to support the verdict, which was returned under instructions sub-

mitting the case to the jury on a theory of equitable estoppel. The rules under which we review the evidence, when challenged as to its sufficiency to support a verdict, were recently reviewed in *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984). We said:

"'It has long been the rule that when a verdict is attacked for insufficiency of the evidence, "the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below." *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977).' [*Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 684, 602 P.2d 1326 (1979).]

. . . .

"'When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene.' [*Timsah v. General Motors Corp.*, 225 Kan. 305, 591 P.2d 154 (1979)]." 235 Kan. at 393.

Earlier in this opinion we discussed the elements of equitable estoppel. The trial court so instructed the jury, and there were no objections to that instruction. The plaintiff contends that, as a result of her telephone conversation with Ms. Rotemeyer, she was induced to believe that her husband's medical insurance coverage continued in his new position. Mrs. Cory followed the admonitions given in the company pamphlet and called the personnel office when the question about continued coverage arose. She testified that she knew her husband's job status changed the first of June, that he lost the company car, the salary, and the expense account, and that she called the company's personnel office to find out about health insurance. If Mrs. Cory's testimony is to be believed, as it must be on appeal, Ms. Rotemeyer assured her that coverage continued. The time of the conversation was June 3, 1981. Both Binkley and Aetna contend that insurance coverage terminated on June 1, 1981. Thus, the thirty-one-day period for converting the group insurance to an individual policy ran until early July. On the date when the telephone conversation was held, the conversion right was in effect. A representation on June 3 that Mr. Cory's health insurance coverage continued would have been highly prejudicial. Such a representation would have indicated to the Corys that

they need not seek to convert the Aetna policy, and that they need not seek separate medical coverage elsewhere.

In this connection, we note that Binkley has its principal offices in Missouri, and Leonard Cory was its only employee in Kansas. The Aetna policy (which is not included in the record on appeal) was presumably delivered to Binkley in Missouri, and thus would be required to conform to the laws of that state. The insurance laws of both Missouri and Kansas required that group hospital, surgical or major medical expense insurance policies contain provisions authorizing the conversion from group to individual policies not later than thirty-one days *after the termination of coverage under the group policy.* See Mo. Ann. Stat. § 376.397 (Vernon 1984 Supp.), and K.S.A. 40-2209, amended by L. 1984, ch. 172, § 4, effective January 1, 1985. Thus the termination of Cory's insurance coverage on June 1, 1981, and not the termination of his employment on May 1, is the critical date for fixing the commencement of the thirty-one-day conversion period. Where policy provisions and state law conflict, state law controls.

Other evidence also tends to support the verdict. Cory was specifically told that he would lose the company car, the telephone credit card, the travel expense payments, and his regular monthly salary. But he was to remain associated with the company, selling its products on an increased commission basis. No one mentioned the health insurance. Additionally, after the telephone conversation, Binkley sent health forms to the Corys for medical expenses incurred after that date, and the company requested additional information so that the claims could be processed.

We hold that there was substantial competent evidence to support the submission of the case to the jury on the theory of equitable estoppel, and to support the jury's verdict.

The judgment is affirmed.

HOLMES, J., not participating.