No. 59,029

DONALD SMITH, *Appellant/Cross-Appellee,* v. UNITED TECHNOLO-
GIES, ESSEX GROUP, INC., WIRE AND CABLE DIVISION, *Appel-
lee/Cross-Appellant.*

(731 P.2d 871)

 Opinion filed
January 16, 1987. 

*Frederick J. Patton, II,* of Patton & Patton, of Topeka, argued the cause and was on the briefs for appellant.

*Thomas H. Bornholdt,* of Bornholdt, Landeck & Owens, of Overland Park, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This is an action by Donald Smith against his former employer, United Technologies, Essex Group, Inc., seeking damages arising from his discharge from employment. The jury found Smith had been discharged in retaliation for his filing of charges with the Kansas Commission on Civil Rights (KCCR) and awarded him $30,000 in actual damages and $25,000 in punitive damages. In its cross-appeal, United Technologies challenges the jury's verdict in a number of respects. Prior to trial, the district court entered summary judgment against Smith on his claim predicated upon his termination being the result of retaliation for having filed a workers' compensation claim. After trial, the district court denied Smith's motion for attorney fees under 42 U.S.C. § 1988 (1982). Smith appeals from these two adverse determinations.

The undisputed factual background may be summarized as follows. Plaintiff Donald Smith is a black man who was employed by United Technologies, Essex Group, Inc., in 1979, as a rod mill operator. Shortly after being hired, plaintiff injured his back, filed a workers' compensation claim, received a disability rating, and returned to work with a medical release. In July 1979, plaintiff filed a charge with the KCCR, alleging racial discrimination. The KCCR found the charge lacked probable cause. In June 1981, plaintiff filed a second charge with the KCCR, alleging employer retaliation. In May of 1981, plaintiff reinjured his back, necessitating a 15 ½ week recuperative period during which he did not work. Upon his return to work, plaintiff was assigned to perform janitorial duties. Disgruntled, plaintiff filed a union grievance because he was qualified as a rewinder and wanted to work in that capacity. As a result, he was given a rewinder's job and was paid the difference between janitor's and rewinder's pay for that period. In November 1981, plaintiff, having aggravated his back injury and, thus, being unable to do the rewinder's job, filed a workers' compensation claim. After

being under a doctor's care until December 14, 1981, plaintiff returned to work under a 50-pound weight restriction. The personnel director said he would put plaintiff on light duty. Plaintiff was returned to work as a rod mill operator. Later, when the rod mill shut down, plaintiff was moved to a rewinder's job. His back injury and concomitant weight restriction prevented plaintiff from performing the rewinder's duties adequately. He filed a grievance through his union. He was subsequently laid off on January 11, 1982. When the mill reopened, plaintiff did not return to work. The workers' compensation claim he had earlier filed was settled on April 9, 1982. Thirteen days later, Smith was discharged on the stated ground that he had failed to report for work following the conclusion of his workers' compensation claim. Plaintiff filed a grievance with his union because of his termination.

Another employee, Terry Cox, was similarly situated, having been discharged following settlement of a workers' compensation claim. Like Smith, Cox grieved his termination. Both employees were members of Local Union No. 851, United Rubber, Cork, Linoleum and Plastic Workers of America, and their employment was covered by a collective bargaining agreement. Said agreement contained the provision that an employee would not be terminated except for proper cause and provided grievance procedures, including binding arbitration, for the resolution of complaints and disputes.

Plaintiff Smith's grievance was concluded first. The arbitrator found that Smith's discharge was unjust and restored him to duty, but denied back pay because Smith had failed to mitigate his position after termination. Cox subsequently settled his grievance on the same basis as the arbitrator's decision relative to Smith and was restored to duty.

On April 20, 1983, plaintiff and Cox brought this action against defendant employer, alleging, *inter alia*, that they had been discharged in retaliation for filing a workers' compensation claim, and had been victims of racial discrimination and retaliation for having filed complaints with the KCCR, all in violation of 42 U.S.C. § 1981 (1982).

Defendant subsequently filed a motion for summary judgment with respect to all claims advanced by both plaintiffs. On June 4, 1984, the trial court sustained defendant's motion on all counts

except the civil rights claims under § 1981. Plaintiffs proceeded to trial on these § 1981 claims. At a jury trial, Cox lost on his claims. Plaintiff Smith lost on his claim of racial discrimination, but received judgment on his claim for unlawful retaliation for having filed the KCCR complaints. He was awarded $30,000 actual damages and $25,000 in punitive damages.

Plaintiff filed a motion for attorney fees pursuant to § 1988. After a hearing, the district court denied the motion. Plaintiff appealed from the trial court's summary judgment ruling with respect to the issue of discharge in retaliation for filing a workers' compensation claim and from the court's denial of attorney fees. Defendant cross-appealed.

## EVIDENTIARY RULINGS

We shall begin with the issues raised in defendant's cross-appeal. The first three of these issues are challenges to evidentiary rulings of the trial court. For its first such issue, defendant contends the trial court erred in admitting certain opinion testimony of lay witnesses.

Specifically, defendant argues that this testimony lacked adequate foundation under K.S.A. 60-456(a), which provides:

"If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony."

In *Schmeck v. City of Shawnee*, 232 Kan. 11, 651 P.2d 585 (1982), this court discussed lay opinion testimony as follows:

"Whether a witness is qualified to testify as to his opinion is to be determined by the trial court in the exercise of its discretion. The exercise of that discretion is not subject to review except in cases of abuse. *Hampton v. State Highway Commission*, 209 Kan. 565, Syl. ¶ 10, 498 P.2d 236 (1972). This court has held that lay witness opinions are admissible even though they embrace ultimate issues. *Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 483 P.2d 1029 (1971). The weight to be given to lay opinion testimony, as well as the weight to be accorded expert testimony, is for the jury to determine. *State v. Shultz*, 225 Kan. 135, 137, 587 P.2d 901 (1978)." 232 Kan. at 31.

Opinion testimony by a lay witness is admissible where it is rationally based on the perception of the witness. *Schmeck v. City of Shawnee*, 232 Kan. 11, Syl. ¶ 9. When it is not shown that the witness had sufficient knowledge on which to base an opinion, the opinion testimony is so conjectural it lacks probative value and may be properly excluded by the trial court. *State v.*

*Richard,* 235 Kan. 355, 681 P.2d 612 (1984); *State v. Amodei,* 222 Kan. 140, 563 P.2d 440 (1977).

The objected-to opinion testimony primarily concerns statements made to the witnesses by members of defendant's management and acts done by such managerial personnel in view of the witnesses from which the witnesses concluded that the involved managerial personnel discriminated against black people and, particularly, black people who filed civil rights complaints. It is to be recalled that racial discrimination was an issue throughout trial although the jury did not find in favor of plaintiff on that claim. After reviewing the record, we conclude this issue is without merit.

For its next issue, defendant contends the trial court erred in permitting plaintiff to introduce evidence of wages lost between the date of his discharge and the date of his restoration to duty.

Defendant contends that an award of back pay or lost wages is an equitable remedy and, as such, is triable to the court and not to the jury, and cites a number of federal cases in support thereof.

Section 1981 provides both legal and equitable remedies. *Johnson v. Railway Express Agency,* 421 U.S. 454, 44 L. Ed. 2d 295, 95 S. Ct. 1716 (1975). The legal remedies include compensatory and punitive damages. The fact that back pay is a monetary award is not sufficient reason to label it legal rather than equitable. *Curtis v. Loether,* 415 U.S. 189, 196, 39 L. Ed. 2d 260, 94 S. Ct. 1005 (1974). Where back pay was awarded in conjunction with reinstatement, traditionally both forms of relief were considered equitable. *Shaw v. Gwatney,* 604 F. Supp. 880, 888 (E. D. Ark. 1985). However, where a party seeks back pay but not reinstatement under § 1981, the party is considered to be asserting a *legal* claim. *Setser v. Novack Inv. Co.,* 638 F. 2d 1137 (8th Cir.), *cert. denied* 454 U.S. 1064, *modified on other grounds* 657 F.2d 962 (8th Cir. 1981); *Shaw v. Gwatney,* 604 F. Supp. at 888-89; *Davis v. Supermarkets Gen. Corp.,* 584 F. Supp. 870, 871 (E.D. Pa. 1984). See also *Thomas v. Resort Health Related Facility,* 539 F. Supp. 630, 634 (E.D. N.Y. 1982) (jury trial warranted in § 1981 action even where reinstatement and back pay sought).

In *Setser v. Novack Inv. Co.,* 638 F. 2d 1137, a white male filed a § 1981 action seeking money damages for, *inter alia,* back pay. Plaintiff did not seek reinstatement. The district court denied

plaintiff's request for a jury trial. The Eighth Circuit reversed. In reversing, the Eighth Circuit determined the back pay claim was a legal, not equitable, claim, stating, "In our view, the remedy of back pay in § 1981 cases is more appropriately characterized as a compensatory, legal damage." The *Setser* court also said, "We conclude that back pay or lost wage determinations are inherently in the nature of legal damages." 638 F.2d at 1142.

The opinions which accompanied the denial of certiorari in *Setser*, see 454 U.S. 1064, read *Setser* as limited to those situations where, as here, back pay, but not reinstatement, is sought.

Reading *Setser* similarly, we conclude that a claim for back pay in a § 1981 action, when unaccompanied by a claim for reinstatement, is a *legal* rather than an equitable claim.

Therefore, since compensatory damages are the damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him, Restatement (Second) of Torts § 903 (1977), the lost wages evidence was properly submitted to the jury as a compensable damage. We conclude that this point is without merit.

For its third issue relative to evidentiary rulings, defendant contends the district court erred in excluding evidence of monies received by plaintiff in a lump sum settlement of his workers' compensation claim.

We have carefully reviewed the record and find no abuse of discretion relative to the exclusion of this evidence.

## SUFFICIENCY OF THE EVIDENCE

The remaining four issues of the cross-appeal fall within the general category of challenges to the sufficiency of the evidence.

First, defendant contends the evidence that defendant retaliated against Smith for filing charges with the KCCR was insufficient, as a matter of law, to support the verdict. Essential to this point is the elimination of all evidence of occurrences prior to two years before this action was commenced. Defendant correctly notes that this action is an action for injury to rights of another, not arising on contract, and so must be brought within two years. K.S.A. 60-513(a)(4). It would appear to be significant to note, at this time, that plaintiff did not seek, in this action, to be recompensed for any diminution in wages prior to his April 1982 termination. This action was commenced in April of 1983. Thus, we are not confronted with a situation where a specific

claim of damage is made for failure to obtain a promotion occurring more than two years after the event. The main thrust of the claim is that the 1982 termination was in retaliation for having previously filed civil rights claims and that, prior thereto, certain things had been done to harass plaintiff and to make his employment record appear to be poor. As a result thereof, plaintiff suffered lost wages (between termination and reemployment by the company) as well as embarrassment and humiliation both prior to and as a result of his termination. As a result of the nature of the claim itself, then, plaintiff's entire employment record with the defendant became germane. Oversimplified, plaintiff attempted to portray himself as a splendid employee who had been harassed and ultimately terminated by management in retaliation for having filed the KCCR claims. Defendant attempted to show plaintiff had been a poor employee and his employment problems and ultimate termination were the result of his own shortcomings. Thus, the whole employment relationship between plaintiff and defendant became relevant in determining the motivation for his termination.

The following testimony by a supervisor of plaintiff relative to a conversation occurring more than two years before the filing of the action is illustrative of the type of evidence defendant seeks to exclude:

"Q. [By Mr. Patton, plaintiff's attorney] Why did you harass Donald Smith?
"A. [Leonard Mann, Smith's foreman] My job was on the line, and I was told to get rid of the man.
"Q. Who told you that?
"A. Maurice Hill.
"Q. Explain to us who Maurice Hill was at that time.
"A. Maurice Hill was the plant manager at the time, sir.
"Q. And why did Maurice Hill tell you to get rid of Donald Smith?
"A. He didn't like blacks.
"Q. How do you know he didn't like blacks?
"A. Because he kept calling them niggers.
"Q. What sort of job was Mr. Smith doing at the time you supervised him in terms of quality?
"A. He was rod mill operator, and he didn't have the experience that the other rod mill operators had, you know, that had been there for five and six years, and he only had been there—he came about the time I did, I imagine, and so I mean, you know, he lacked the physical hands-on experience that the rest of them did have, but he was an average rod mill operator.
"Q. Do you recall when this conversation with Mr. Maurice Hill, the acting plant manager, took place, approximately?

"A. I don't remember the date. I do remember the time of day. It was right at shift change, at 3 o'clock in the afternoon.

"Q. Tell us what was said.

"A. Mr. Smith was going to his machine to run his machine that night, and the personnel manager, Michael Sullivan, and myself, and Maurice Hill was standing there, and they were looking over my area and asked me what we were running that night, and I told them, and Mr. Smith had walked by me to go to his machine, and he asked me why that nigger was still here and I—

"Q. (Interrupting) This is the acting plant manager asking you that?

"A. Yes, sir. I was just kind of stunned for a minute, you know, and I just sat—stood there, and he says, 'You've got two weeks to fire this man,' he says, 'or I'm going to fire you and get somebody in here that will,' and I told him then that the man hadn't done anything wrong and that I had already had one complaint filed against me right now pending, and I asked him if that was what he wanted, was another one, and he stated, 'Well, just offer him a $300 out-of-court settlement. That ought to get rid of him.' "

It is true plaintiff was not terminated until much later. However, we cannot conclude that it was improper to admit testimony such as this although it refers to matters occurring outside the two-year statute of limitations. The above-cited action occurred after plaintiff had filed his first KCCR claim.

There was testimony of a retaliatory policy of defendant against employees who had filed KCCR claims. It is not our role on appellate review to weigh such evidence.

The applicable burden of proof rule consistent with federal case law was stated in *Woods v. Midwest Conveyor Co.*, 231 Kan. 763, Syl. ¶ 2, 648 P.2d 234 (1982), as follows:

"The burden of proof . . . is on the complainant to prove by a preponderance of the evidence that the respondent is guilty of a discriminatory practice. Initially, the complainant must present a prima facie case of discrimination. Then the burden of going forward with the evidence shifts to respondent and this burden may be discharged by evidence of a legitimate, nondiscriminatory reason for respondent's conduct. Once the respondent discharges this obligation, the complainant must continue with the burden of proving by a preponderance of the evidence that the reasons offered by respondent were merely a pretext for discrimination."

We conclude the evidence herein was sufficient to present a submissible § 1981 claim for retaliation for having filed KCCR claims and that the evidence was sufficient to support the jury's finding of liability.

Next, defendant challenges the sufficiency of the evidence supporting the award of $30,000 for actual damages.

The rules under which we review the evidence, when challenged as to sufficiency to support a verdict, have been long

familiar to this court. In *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, Syl. ¶ 1, 681 P.2d 1038, *cert. denied* 469 U.S. 965 (1984), this court said:

"When a verdict is attacked for insufficiency of the evidence, the duty of the appellate court extends only to a search of the record for the purpose of determining whether there is any competent substantial evidence to support the findings. The appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances, the reviewing court must review the evidence in the light most favorable to the party prevailing below."

See *Cory v. Binkley Co.*, 235 Kan. 906, 913, 684 P.2d 1019 (1984); *Hand Realty Co. v. Meyers*, 234 Kan. 304, 306, 672 P.2d 583 (1983); *Cantrell v. R. D. Werner Co.*, 226 Kan. 681, 684, 602 P.2d 1326 (1979); *Craig v. Hamilton*, 221 Kan. 311, 313, 559 P.2d 796 (1977).

" 'Substantial evidence' is defined as evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *In re Certif. of Need App. by Community Psychiatric Centers, Inc.*, 234 Kan. 802, 806, 676 P.2d 107 (1984); *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 661 P.2d 368 (1983); *Kelly v. Kansas City, Kansas Community College*, 231 Kan. 751, 648 P.2d 225 (1982). Stated in another way, 'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 630 P.2d 1131 (1981)." *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. at 393.

Similarly, in *Tice v. Ebeling*, 238 Kan. 704, 715 P.2d 397 (1986), this court said:

"When a verdict is attacked on the ground it is contrary to the evidence, it is not the function of this court on appeal to weigh the evidence or pass on the credibility of the witnesses. If the evidence with all reasonable inferences to be drawn therefrom, when considered in a light most favorable to the successful party below, will support the verdict this court should not intervene. *Toumberlin v. Haas*, 236 Kan. 138, Syl. ¶ 5, 689 P.2d 808 (1984)." 238 Kan. at 708.

Plaintiff sought recovery for lost wages, humiliation, embarrassment, and mental anguish arising from defendant's retaliatory action.

Defendant contends on appeal essentially that, in order to recover damages, actual injury must be proved, never presumed, and that plaintiff's uncorroborated testimony of $14,000 in lost wages was insufficient to support the verdict.

Compensatory damages are available under § 1981. *Muldrew v. Anheuser-Busch, Inc.*, 728 F.2d 989, 992 (8th Cir. 1984).

Damages may include embarrassment, humiliation, and mental anguish suffered. *McCrary v. Runyon*, 515 F.2d 1082 (4th Cir. 1975). Indeed, the *McCrary* court found embarrassment, humiliation, and mental anguish as "natural consequences" of the denial of § 1981 rights. 515 F.2d at 1089. Further, one's own testimony is sufficient to establish humiliation or mental distress. *Williams v. Trans World Airlines, Inc.*, 660 F.2d 1267, 1272-73 (8th Cir. 1981). We have determined earlier in this opinion that the evidence of lost wages was properly admitted.

We conclude the $30,000 award for actual damages is supported by the evidence.

Next, defendant argues that the issue of punitive damages should not have been submitted to the jury.

Defendant contends that under federal case law more outrageous conduct than occurred herein is necessary before a jury can award punitive damages.

In *Smith v. Wade*, 461 U.S. 30, 75 L. Ed. 2d 632, 103 S. Ct. 1625 (1983), the U.S. Supreme Court held, in a § 1983 action brought by a Missouri State Prison inmate against five prison guards for an alleged violation of his Eighth Amendment rights, that:

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. We further hold that this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness." 461 U.S. at 56.

In the case before us there was evidence of a concerted effort by defendant's managerial personnel to harass and terminate plaintiff in retaliation for his having filed civil rights claims. We find no error in the submission of punitive damages instructions to the jury.

Finally, defendant argues that the award of punitive damages in the amount of $25,000 was excessive and not supported by the evidence.

Federal decisions concerning Title VII actions are not controlling on this court. *Woods v. Midwest Conveyor Co.*, 231 Kan. at 767. Kansas case law holds that an appellate court will not find a punitive damage award excessive unless it is of a size to shock the conscience of the appellate court. *Binyon v. Nesseth*, 231 Kan. 381, Syl. ¶ 4, 646 P.2d 1043 (1982); *Cantrell v. R. D. Werner*

*Co.*, 226 Kan. at 686; *Henderson v. Hassur*, 225 Kan. 678, 697, 594 P.2d 650 (1979). Further, punitive damages are allowed not because of any special merit in the injured party's case, but are imposed by way of punishing the wrongdoer for malicious, vindictive, or a willful or wanton invasion of the injured party's rights, the purpose being to restrain and deter others from the commission of like wrongs. *Plain Resources, Inc. v. Gable*, 235 Kan. 580, Syl. ¶ 6, 682 P.2d 653 (1984). A corporation is not liable for punitive damages awarded for an employee's tortious acts within the scope of employment unless (a) a corporation or its managerial agent authorized the doing and manner of the act; (b) the employee was unfit and the corporation or its managerial agent was reckless in employing or retaining him; (c) the employee was employed in a managerial capacity and was acting within the scope of employment; or (d) the corporation or its managerial agent ratified or approved the act of the employee. *Gould v. Taco Bell*, 239 Kan. 564, Syl. ¶ 5, 722 P.2d 511 (1986); *Kline v. Multi-Media Cablevision, Inc.*, 233 Kan. 988, Syl. ¶ 4, 666 P.2d 711 (1983). Against this standard, there appears to be sufficient competent evidence to support the award of punitive damages. The evidence, including evidence against management, is sufficient for a jury to conclude there was a pattern over time amounting to a policy of discriminating against Smith in retaliation for filing claims with the KCCR.

We conclude that defendant's challenge to the size of the punitive damage award is without merit.

SUMMARY JUDGMENT

We turn now to the issues raised in plaintiff's appeal. First, plaintiff contends the district court erred in entering summary judgment in favor of defendant on plaintiff's claim alleging his termination was in retaliation for having filed workers' compensation claims.

This court's recent decision in *Cox v. United Technologies*, 240 Kan. 95, 727 P.2d 456 (1986), is determinative of this issue. In *Cox*, we declined to extend the tort of retaliatory discharge judicially recognized in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), to include an employee adequately protected contractually from such discharge by a collective bargaining agreement. Cox was a co-plaintiff in the case before us and summary judgment was entered in favor of defendant on this

claim asserted by both Cox and plaintiff herein. Both were covered by the same collective bargaining agreement and the rationale in *Cox* applies with equal force to plaintiff's claim herein.

## ATTORNEY FEES

For his final issue, plaintiff contends the trial court erred in denying his claim for attorney fees under § 1988.

42 U.S.C. § 1988, also known as the Civil Rights Attorney's Fees Award Act, provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

The question, then, is whether or not the district court abused its discretion in denying attorney fees herein.

The following should be noted. Plaintiff's counsel represented both plaintiff Smith herein and co-plaintiff Cox (not involved in this appeal). Smith is a black man and Cox is a white man. Each brought this action against their employer stating numerous counts. These claims are not identical for each plaintiff. Generally speaking, Cox alleged he had been discriminated against and terminated due to his friendship with Smith and his filing of KCCR claims. Smith contended he had been discriminated against as a black man and that he had been harrassed and terminated because he had filed civil rights claims. Both men sought damages for retaliation for having filed workers' compensation claims, breach of the employer-employee fiduciary relationship, and for prima facie torts. Obviously, different facts were involved in the claims of each plaintiff.

The case herein was commenced on April 20, 1983. All counts other than the § 1981 claims were disposed of by the summary judgment in favor of defendant on June 4, 1984. However, this followed more than two years of discovery activities. The plaintiffs' two remaining claims went to jury trial. Cox lost on both of the viable counts—Smith prevailed on one.

Counsel for the two plaintiffs sought attorney fees under § 1988 for his representation of Smith. He presented the court with a time sheet reflecting the entire amount of time spent representing both plaintiffs on all claims and sought compensation for all hours expended in the case (280.95 hours at $75.00 per hour plus expenses of $559.20 for a total of $21,630.45). He could neither segregate hours spent on Cox's claims from those

spent on Smith's claims nor separate time spent on Smith's unsuccessful claims from time spent on his one successful claim. A number of claims involved state law actions for which no attorney fees would be allowed even if they had been successful.

As noted in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983):

"In the future, district judges in this Circuit will inform lawyers that if they intend to seek attorney's fees under § 1988 they must keep meticulous, contemporaneous time records to present to the court upon request." 713 F.2d at 553.

In denying the motion for attorney fees herein, the trial court stated:

"After reviewing the briefs of counsel, it appears that the plaintiff Smith had a contingency fee contract with his counsel of record providing that counsel would receive one-third of any amount recovered. It also appears from the authorities cited that under 42 U.S.C. 1988, the trial court has discretion as to whether or not attorney's fees should be awarded in any given case. In this case, the claims of the plaintiff Cox were not successful and it is difficult to discern the amount of counsel's time expended on the case that should be allocated to his representation of Mr. Cox. It is further noted that a substantial portion of counsel's time may be attributable to the prosecution of unsuccessful claims in this case which were brought under state law and for which attorney's fees would not be allowable.

"After considering the size of the jury's verdict in this case, together with all of the other factors mentioned in the briefs of counsel, the Court finds that Mr. Smith's contingency fee contract with counsel will appropriately compensate his attorney and an additional award of attorney's fees does not appear to be appropriate. For the foregoing reasons, the plaintiff's Motion for Attorney's Fees should be overruled."

In the case herein, the jury awarded actual damages of $30,000 and punitive damages of $25,000 for a total of $55,000. The aggregate of the one-third contingent fee and expenses is substantially under the punitive damage award of $25,000. Payment of the contingent fee contract figure would adequately compensate plaintiff's counsel without diminishing plaintiff's award for actual damages.

Under the totality of the circumstances herein, we cannot find the trial court abused its discretion in denying an award of attorney fees.

The judgment is affirmed.

HERD, J., concurring in result.

ALLEGRUCCI, J., not participating.