No. 60,225

Rusty Coleman, *Appellant,* v. Safeway Stores, Inc., *Appellee.*

(752 P.2d 645)

Opinion filed March 25, 1988.

*N. Trip Shawver,* of Wichita, argued the cause and was on the brief for appellant.

*Steven R. Smith,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Plaintiff, an employee covered by a collective bargaining agreement, claims that she was assessed infractions for absences incurred due to work-related injuries and while she was under the care of a physician provided by defendant pursuant to K.S.A. 1987 Supp. 44-510 of the Workers' Compensation Act. She further asserts that prior to her injuries she had not accumulated enough attendance infractions for termination. Plaintiff's union declined to arbitrate the issue.

Plaintiff filed a petition in the District Court of Sedgwick County alleging that she was wrongfully terminated by her employer, Safeway Stores, Inc., (Safeway) as a result of a workers' compensation injury. The petition was filed prior to this court's decision in *Cox v. United Technologies, Inc.*, 240 Kan. 95, 727 P.2d 456 (1986). The defendant filed a motion for summary judgment. At the hearing on Safeway's motion for summary judgment, considerable evidence and argument was presented to the district judge on the issue of whether plaintiff had sufficient infractions for termination prior to the additional absences assessed while she was off work due to injury. Despite the fact that this issue was controverted by documentary evidence, the district court granted Safeway's motion. Plaintiff appealed.

The appeal was filed after our decision in *Cox*. The Kansas Court of Appeals, in an unpublished opinion filed October 1, 1987, affirmed the trial court's grant of summary judgment to Safeway, holding that, pursuant to *Cox*, an employee covered by a collective bargaining agreement may not maintain a state tort action for retaliatory discharge, even if the union refuses to take the grievance to arbitration. This court accepted appellant's petition for review to consider whether *Cox* would apply when the union refuses to present an employee's retaliatory discharge claim for arbitration and whether the district court erred by granting summary judgment. The majority of this court now overrules the decision in *Cox*, affirmed in *Smith v. United Technologies*, 240 Kan. 562, 572, 731 P.2d 871 (1987), and *Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 (1987), *reh. denied* January 20, 1988, and extends recognition of the tort of retaliatory discharge for filing a workers' compensation claim to employees protected contractually from such discharge by a collective bargaining agreement. Therefore, we reverse the

Court of Appeals and, after reviewing the record, we further determine that because the facts in this case were disputed, the district court erred by granting summary judgment.

Coleman had been employed by Safeway in Wichita for several years prior to 1984. In August 1984, Safeway instituted a new attendance policy which required all employees to call in one half hour before the beginning of their shift if they were going to be absent. The attendance policy allowed a disabled employee to call in once a week if the disability lasted for more than a week, if a medical statement was provided with a return to work date, and if the approval of the plant nurse or Employee Relations Supervisor was obtained. Six infractions of the attendance policy resulted in termination.

On June 14, 1984, Coleman sustained a work-related injury to her wrist which required her to be off work. Coleman was treated for this injury by the company doctor. On September 19, 1984, she had surgery for this injury which required her to be absent from employment. During the time she was off work, although she was under the care of the company doctor, her employer assessed infractions against her for failing to call in daily to report her absences. Upon Coleman's return to work she was terminated due to excessive absences.

Coleman filed a grievance with her union, which declined to pursue the matter through arbitration. Coleman appealed this decision to the Union Executive Committee, which affirmed the union's decision not to arbitrate. Coleman then filed an action in Sedgwick County District Court alleging that she was fired while being off work due to a work-related injury, and while she was being provided medical care by her employer pursuant to the Workers' Compensation Act, K.S.A. 1987 Supp. 44-510. The district judge, even though there was a genuine issue of fact, granted Safeway's motion for summary judgment, finding that even if all the work-related absences were discounted, Coleman had incurred enough infractions before her surgery to be terminated. The judge further found that Safeway's attendance policy was not arbitrary or capricious. Coleman appealed, contending that Safeway's actions were tantamount to a wrongful discharge for exercising her rights under the Workers' Compensation Act. The Court of Appeals affirmed pursuant to *Cox v. United Technologies,* 240 Kan. 95. We granted review.

The issue we consider here is whether, where a contract between an employer and employees, or their respective representatives, provides for arbitration of claims, the agreement to arbitrate includes arbitration of claims for an employer's tortious acts which violate the public policy of this state, and, further, whether the contract precludes the wrongfully discharged employee from filing an action in tort. Safeway contends that the public policy determined in *Murphy v. City of Topeka*, 6 Kan. App. 2d 488, 630 P.2d 186 (1981), which allows employees to bring tort claims against their employers who discharge them for filing workers' compensation claims, was properly limited to at-will employees, while Coleman argues that the public policy underlying *Murphy* must apply to all employees. We believe that Coleman is correct.

By "public policy," we have referred to a principle of law which holds that no citizen can lawfully do that which injures the public good. See *Master Builders Ass'n v. Carson*, 132 Kan. 606, 607, 296 Pac. 693 (1931); *Petermann v. International Brotherhood of Teamsters, Local 396*, 174 Cal. App. 2d 184, 344 P.2d 25 (1959) (citing *Safeway Stores v. Retail Clerks etc. Assn.*, 41 Cal. 2d 567, 575, 261 P.2d 721 [1953]).

In *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876 (1981), the Illinois Supreme Court commented on the definition of "public policy":

"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." 85 Ill. 2d at 130 (citing *Smith v. Board of Education*, 405 Ill. 143, 147, 89 N.E.2d 893 [1950]).

It is the general rule that contracts against public policy are illegal and void. An agreement or contract made in violation of established public policy is not binding and will not be enforced. The surrender of a fundamental right is not within the power of an individual if the public interest is prejudiced thereby. 17 Am. Jur. 2d, Contracts § 174, p. 532. An agreement is against public policy if it is injurious to the interest of the public, contravenes some established interest of society, violates some public statute, or tends to interfere with the public welfare or safety. *Hunter v.*

*American Rentals*, 189 Kan. 615, 618, 371 P.2d 131 (1962). Illegality of a contract from the standpoint of public policy depends on the facts and circumstances of a particular case. *In re Estate of Shirk*, 186 Kan. 311, 350 P.2d 1 (1960).

Prior to the Court of Appeals decision in *Murphy*, other jurisdictions limited the employment-at-will rule so employers could not discipline or discharge employees for reasons violative of an established or statutorily declared public policy. Generally, cases involving discharge of employees in contravention of established state policy may be divided into three classes: (1) cases in which employees are discharged for refusing to violate criminal statutes; (2) cases in which employees are discharged for exercising a statutory right; and (3) cases in which employees are discharged for complying with a statutory duty. See Hill, *Arbitration as a Means of Protecting Employees from Unjust Dismissal: A Statutory Proposal*, 3 N. Ill. L. Rev. 111, 142 (1982). Specific motives for discharge of employees which have been held actionable by some courts as violative of state public policy include retaliation for filing workers' compensation claims, retaliation for opposing illegal or unethical activities of the employer, retaliation for exercising rights under labor-management relations statutes, penalizing the employee for refusing to take a polygraph examination, and penalizing the employee for serving on a jury. See *Morriss v. Coleman Co.*, 241 Kan. 501, 509, 738 P.2d 841 (1987).

Public policy can be determined by both the legislature and the courts. Under the Kansas Constitution, the primary lawmaking body is the legislature. Courts must respect legislative expressions when determining or when forming public policy. Given the right to form public policy by the legislature, courts are faced with three different situations: (1) The legislature has clearly declared the public policy of the state; (2) the legislature, though not directly declaring public policy, has enacted statutory provisions from which public policy may reasonably be implied; or (3) the legislature has neither made a clear statement of public policy nor can it be reasonably implied. *Wicina v. Strecker*, 242 Kan. 278, Syl. ¶ 3, 747 P.2d 167 (1987).

In deciding this case, we draw on both legislative and judicial expressions of public policy. Prior to *Murphy*, the legislature in

1973 expressed the public policy of this state regarding agreements to arbitrate future torts in the Uniform Arbitration Act, K.S.A. 5-401 *et seq.* The legislature forbade the inclusion of arbitration of such torts in arbitration contracts. Specifically, K.S.A. 1987 Supp. 5-401 provides:

"**Validity of arbitration agreement.** (a) A written agreement to submit any existing controversy to arbitration is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

(b) Except as provided in subsection (c), a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable except upon such grounds as exist at law or in equity for the revocation of any contract.

(c) The provisions of subsection (b) shall not apply to: (1) Contracts of insurance; (2) contracts between an employer and employees, or their respective representatives; or (3) *any provision of a contract providing for arbitration of a claim in tort.*" (Emphasis added.)

In *Murphy v. City of Topeka,* 6 Kan. App. 2d 488, a Court of Appeals panel comprised of Justice Herd of the Supreme Court, Judge Swinehart of the Court of Appeals, and District Judge William M. Cook recognized a public policy exception to the employment-at-will doctrine for employees discharged in retaliation for filing workers' compensation claims. The *Murphy* court stated the public policy as follows:

"The Workmen's Compensation Act provides efficient remedies and protection for employees, and is designed to promote the welfare of the people in this state. It is the exclusive remedy afforded the injured employee, regardless of the nature of the employer's negligence. To allow an employer to coerce employees in the free exercise of their rights under the act would substantially subvert the purpose of the act." 6 Kan. App. 2d at 495-96.

The court in *Murphy* took care to emphasize the tort nature of the employee's cause of action and stated that the claim arose "from a duty imposed by law based upon public policy preventing an employer from wrongfully discharging an employee in retaliation for filing a workmen's compensation claim. Plaintiff's action clearly sounds in tort, and the mere existence of a contractual relationship between the parties does not change the nature of his action." 6 Kan. App. 2d at 493. Although the employee in *Murphy* was an at-will employee, the primary emphasis of the opinion was on the strong public policy of Kansas underlying the Workers' Compensation Act, applicable to

all workers injured on the job. Allowing the cause of action in tort was necessary to provide Murphy with a remedy and, in addition, to enforce the duty of his employer to compensate Murphy for the work-related injury. This policy was affirmed in *Anco Constr. Co. v. Freeman*, 236 Kan. 626, 693 P.2d 1183 (1985), even though Freeman's claim, that he was fired because he protested inadequate wages under the employment contract, was an assertion of an unfair labor practice under the exclusive jurisdiction of the National Labor Relations Act.

In *Cox v. United Technologies*, 240 Kan. 95, however, this court held that the public policy of *Murphy* was limited to employees at will and did not apply to employees covered by collective bargaining agreements which preclude discharge except for proper cause. The *Cox* court reasoned that because the employment agreement provided a grievance procedure, which includes binding arbitration, Cox and all other workers covered by such agreements did not require the tort remedy. Justice Herd dissented, reasoning that the grievance procedure in a union-management collective bargaining agreement pertains to breach of contract, not torts, and that the majority's decision denied these workers, intended to be included by *Murphy*, an adequate remedy.

*Cox* was followed in *Smith v. United Technologies*, 240 Kan. 562, where we affirmed the trial court's grant of summary judgment to defendant on plaintiff's claim of retaliatory discharge for filing a workers' compensation claim. Smith and Cox, co-plaintiffs at the trial level, were covered by the same collective bargaining agreement and we applied the *Cox* rationale to Smith's claim. 240 Kan. at 572-73.

*Armstrong v. Goldblatt Tool Co.*, 242 Kan. 164, 747 P.2d 119 (1987), affirmed the *Cox* rationale that employees covered by collective bargaining have an adequate remedy and do not need the protection afforded at-will employees in *Murphy*. Although the district court in *Armstrong* also held that a state tort action for retaliatory discharge was preempted by federal labor law, the Court of Appeals, in an unpublished opinion filed March 5, 1987, did not address the preemption issue, but decided the case purely based on *Cox*. On Armstrong's petition for review, the majority of this court found that the decision in *Cox* did not

unconstitutionally (1) deny unionized workers due process of law; (2) create impermissible and irrational classification of employees and employers; or (3) violate the First Amendment right of free association of organized workers. Justice Allegrucci joined the dissents of Justices Herd and Lockett. The majority opinion referred to but did not address the federal preemption issue. However, by deciding *Armstrong* on state public policy grounds, the majority and the dissent implicitly agreed that the state tort action is not preempted by federal law.

Because the preemption question is an important issue, a review of principles of federal preemption in labor disputes is required. Section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a) (1982), provides federal court jurisdiction for acts in violation of contracts between employers and labor organizations and has been construed to require the application of federal labor law to such suits. *Teamsters Local v. Lucas Flour Co.*, 369 U.S. 95, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957).

In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985), the United States Supreme Court established standards for deciding whether state tort claims are preempted by federal labor law. That case involved a claim by an employee against his employer alleging bad faith handling of a disability insurance claim due under his collective bargaining agreement. In holding that the state tort claim in that case was preempted, the court stated that the essence of preemption by § 301 of the LMRA is the need for uniformity in labor contract interpretation and that, if the resolution of the state tort claim depended upon reference to the labor contract, the tort claim would be preempted.

The Court reasoned that not all disputes "tangentially" involving a provision of the collective bargaining agreement would be preempted. The Court framed the issue as whether the state tort action confers nonnegotiable state law rights on employers and employees independent of any right established by contract or, instead, whether evaluation of the tort claim is "inextricably intertwined" with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the

contract relationship, the state law is preempted. 471 U.S. at 211, 213. The Court, however, emphasized that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law. . . . In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. at 211-12.

The Illinois Supreme Court recently held in *Gonzales v. Prestress Engineering Corp.*, 115 Ill. 2d 1, 503 N.E.2d 308 (1986), *cert. denied* 483 U.S. 1032, 97 L. Ed. 2d 779 (1987), that the tort of retaliatory discharge for filing a workers' compensation claim is not preempted by federal law. The court reasoned that the *Allis-Chalmers* preemption does not extend to the tort of retaliatory discharge since the claim does not turn upon an interpretation of the labor contract, but instead arises out of alleged violation of the clearly mandated public policy of Illinois against discharging workers in retaliation for filing workers' compensation claims. Because of the split in the federal circuits on this issue, the United States Supreme Court has granted certiorari in *Lingle v. Norge Div. of Magic Chef, Inc.*, 823 F.2d 1031 (7th Cir. 1987), *cert. granted* 108 S. Ct. 226 (1987), to decide whether state actions for retaliatory discharge for filing workers' compensation claims are preempted by federal labor law.

We agree with the Illinois Supreme Court in *Gonzales* and believe that wrongful discharges under a contract must be distinguished from wrongful discharges in violation of state public policy. As the Court in *Allis-Chalmers* stated:

"In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." 471 U.S. at 212.

A state tort action for retaliatory discharge for filing a workers' compensation claim is a claim for a violation of state public policy independent of a collective bargaining agreement. We recognize federal courts have jurisdiction over actions under

section 301 of the LMRA for breach of collective bargaining agreements, and that principles of federal law preempt inconsistent state law in this area. However, the tort claim in question is based upon state public policy conferring upon all employees and employers certain nonnegotiable rights and imposing certain nonnegotiable duties and obligations, regardless of whether employees are covered by a collective bargaining agreement. We believe these rights and duties cannot be a part of a collective bargaining contract, and, thus, that a retaliatory discharge claim is not preempted by the bargaining agreement or the LMRA.

Returning to our discussion of *Cox, Smith,* and *Armstrong,* there are several important reasons for overruling our previous opinions. These cases stand for the disturbing proposition that an employee subject to a collective bargaining contract surrenders state tort remedies which were neither included in the bargaining process nor intended by the parties to be a part of the contract. In addition, by judicial pronouncement in *Cox,* employers with collective bargaining contracts are immunized from accountability for violations of state public policy. See *Midgett v. Sackett-Chicago, Inc.,* 105 Ill. 2d 143, 150, 473 N.E.2d 1280 (1984), *cert. denied* 472 U.S. 1032, 474 U.S. 909 (1985).

Further, *Cox* did not fully recognize the limited remedy afforded the injured employee through collective bargaining. The grievance and arbitration procedure is an inappropriate forum for the enforcement of state public policy because arbitrators are bound by the limitations imposed by the terms of the collective bargaining agreement. The United States Supreme Court reached this result in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011 (1974), holding that an employee's arbitration proceeding did not bar an action under Title VII of the Civil Rights Act because arbitration was an inappropriate forum in which to adjudicate federal statutory rights. See also *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 67 L. Ed. 2d 641, 101 S. Ct. 1437 (1981) (suits under Fair Labor Standards Act).

Arbitral procedures, while well suited to the resolution of contractual disputes, are comparatively inappropriate for the resolution of tort claims. Even where the union has fairly and fully presented the employee's claim, the employee's statutory

right might still not be adequately protected. As Justice Powell reasoned in *Alexander*, the specialized competence of arbitrators pertains primarily to the law of the shop, and not the law of the land. The factfinding process in arbitration does not equate with judicial factfinding. Rules of evidence do not usually apply; the rights and procedures common to civil trials such as discovery, compulsory process, cross-examination, and testimony under oath are often severely limited or unavailable. 415 U.S. at 56-57. These limitations have a significant impact in a case of retaliatory discharge where the focus is on the employer's motive for the firing.

Even though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so. An arbitrator's power is both derived from and limited by the collective bargaining agreement. Because the arbitrator is required to effectuate the intent of the parties, rather than enforce the statute, the arbitrator may be required to issue a ruling that is proper under the contract but contrary to an employee's protected state statutory right. See *Barrentine v. Arkansas-Best Freight System*, 450 U.S. at 742.

Finally, we believe the *Cox*, *Smith*, and *Armstrong* courts did not fully consider that decisions to enter collective bargaining agreements are made by majority vote. Thus, a number of employees who may have voted not to enter into the agreement are forced to accede to the will of the majority. The employee subject to a collective bargaining agreement whose individual right has been violated, is forced to submit his grievance under an agreement which was never designed to protect individual workers, but to balance the individual against the collective interest.

The potential result of a union's emphasis on the collective good is that, in some cases, the employee may be left without a remedy for an employer's violation of state public policy. Here, Coleman's union has decided for the good of the union not to support Coleman's claim by arbitration. If there is no independent state action for retaliatory discharge, and no avenue for Coleman to pursue her state public policy right against her employer, Coleman is limited to proceeding against her representative, the union, in federal or state court under Section 301 of

the LMRA for her union's breach of its duty of fair representation.

For all these reasons, we determine that employees covered by collective bargaining agreements who are wrongfully discharged in violation of state public policy, in this case the policy underlying the Workers' Compensation Act, have a tort cause of action for retaliatory discharge. We stress that by recognizing this cause of action for Coleman and those like her, we do not hold that employees covered by collective bargaining agreements have a tort cause of action for wrongful discharge in general. Our recognition of such causes of action is limited to wrongful discharges in violation of state public policy clearly declared by the legislature or by the courts.

We turn now to the district court's grant of summary judgment in favor of defendant Safeway. The district court determined that, even if Coleman's work-related absences were discounted, she had still incurred enough absence infractions for termination. We disagree.

Summary judgment is proper if no genuine issues of material fact remain, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact exist. When a motion for summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion. *Hunt v. Dresie*, 241 Kan. 647, 652-53, 740 P.2d 1046 (1987). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact. *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 740 P.2d 1083 (1987). Where the facts presented in a summary judgment motion are subject to conflicting interpretations or reasonable persons might differ as to their significance, summary judgment is improper. *Williams v. Community Drive-in Theater, Inc.*, 214 Kan. 359, 364, 520 P.2d 1296 (1974).

In this case, it was undisputed that Safeway could have terminated Coleman's employment under the applicable attendance policy if she had accrued six infractions. The district court

correctly decided that any absences caused by her work-related injury should not be counted against Coleman. Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers' compensation claim, a practice contrary to the public policy of this state as decided in *Murphy v. City of Topeka*. Other jurisdictions have also recognized that it is a violation of public policy and workers' compensation law to discharge an employee for absences due to work-related injuries. See *e.g., Lo Dolce v. Regional Transit Service, Inc.*, 77 App. Div. 2d 697, 429 N.Y.S.2d 505 (1980). Safeway's claim that Coleman was not discharged for absences, but for failing to call in to report absences, is not persuasive given the fact that Coleman was being treated by a company physician who provided reports to Safeway regarding Coleman's condition.

The district court, however, erred in granting summary judgment on the issue of whether Coleman had accrued six infractions, even after the work-related absences were discounted. At the hearing on summary judgment, Coleman presented evidence which tended to show that before she began to accrue infractions for her work-related injury, she had only 4½ or 5½ infractions. Further evidence, including the attendance record sheet, tended to show that absences which occurred on September 12 and September 13, 1984, were related to her injury. Therefore, reading the record in the light most favorable to plaintiff, as we are required to do on appeal, there was a genuine issue of material fact as to whether Coleman had accumulated six attendance infractions before her surgery on September 19, 1984. The Court of Appeals decision affirming the district court is reversed. The district court's grant of summary judgment is reversed and the case is remanded for further proceedings.

McFARLAND, J., dissenting.