895 F.2d 705
 52 Fair Empl.Prac.Cas. 44, 52 Empl. Prac.
Dec. P 39,604,
5 Indiv.Empl.Rts.Cas. 369
Maureen POLSON, Plaintiff-Appellant,
v.
Jerry DAVIS, in his individual and official capacity as an
employee of the City of Kansas City, Kansas, and
The City of Kansas City, Kansas,
Defendants-Appellees.
 No. 87-1114.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 6, 1990.
 
 James L. Crabtree, Overland Park, Kan., for plaintiff-appellant.
 Daniel B. Denk (Douglas M. Greenwald with him, on the brief) of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendants-appellees.
 Before LOGAN, ANDERSON, and EBEL, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 In this appeal we must decide whether Kansas courts would recognize certain causes of action plaintiff Maureen Polson asserts in connection with her discharge from employment, whether the district court erred in jury instructions, whether Title VII claims can be enforced through 42 U.S.C. Sec. 1983, and whether certain alleged misconduct at trial prejudiced plaintiff's Sec. 1983 case which plaintiff lost before the jury. The facts of this case are set out in detail in the district court's pretrial opinion, reported as Polson v. Davis, 635 F.Supp. 1130 (D.Kan.1986), and in the district court's memorandum and order. II R. tab 119. We will recount only the most pertinent facts.
 
 
 2
 Plaintiff was hired as an "Employment Supervisor" by defendant Kansas City, Kansas. Her employment was confirmed in a letter from her immediate supervisor, defendant Jerry Davis. The district court concluded, and plaintiff does not challenge here, that the circumstances of her hiring reflected employment "at will." Id. at 1140-41, 1149.
 
 
 3
 Plaintiff's duties included reviewing employment applications and making recommendations to various city departments regarding which applicants were most suitable for their hiring needs. Throughout the term of her employment, plaintiff's relationship with defendant Davis gradually deteriorated. It is plaintiff's contention that this deterioration was caused by her continuing objections to the defendants' hiring policies, which she viewed as discriminatory. It is defendants' contention that plaintiff was abrasive and insubordinate, which quickly soured her relationship with her supervisor.
 
 
 4
 Defendants terminated plaintiff's employment, effective June 20, 1983. Davis had notified her, a month prior to that, that she was being terminated for "unprofessional conduct." Since her termination, this information has been made public by defendant Davis, and by plaintiff herself in that she has informed potential employers of the reason cited for her termination. In addition, plaintiff authorized review of her personnel notebook by the press.
 
 I Defamation
 
 5
 Polson claims that the defendants, in particular defendant Davis, defamed her in publishing the reasons for her termination, and that the trial court erred in its jury instruction on this issue.[1] Specifically, plaintiff argues that the trial court should have instructed the jury on the theory of defamation per se, which does not require proof of actual damages.
 
 
 6
 It is true that Kansas once followed the common law in dividing defamation into two types: defamation per se and defamation per quod. Gobin v. Globe Publishing Co., 232 Kan. 1, 649 P.2d 1239, 1242 (1982). Defamation per se, which included, inter alia, statements that impugned the defamee's competence in her trade or profession, did not require proof of actual damages for a finding of liability. Instead, damage was presumed from the nature of the statement. Polson, 635 F.Supp. at 1147. On the other hand, defamation per quod required proof of actual damages for a finding of liability. The parties do not dispute, as a matter of law, that the statements at issue here fall into the traditional defamation per se category. So the issue that remains is whether Kansas still recognizes defamation per se as a separate type of defamation.
 
 
 7
 Plaintiff has failed to persuade us that the district court erred in its interpretation of Kansas law. In Gobin, the Kansas Supreme Court abolished the distinction between defamation per se and defamation per quod. Citing Gertz v. Robert Welch Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the court stated, "Damages recoverable for defamation may no longer be presumed; they must be established by proof, no matter what the character of the libel." Gobin, 649 P.2d at 1242.
 
 
 8
 As the plaintiff correctly notes, the United States Supreme Court restricted the rule of Gertz after Gobin was decided. In Gertz, the Court held that, absent proof of malice, a defamation defendant cannot be held liable for presumed damages. 418 U.S. at 349, 94 S.Ct. at 3011. Later, however, the Court restricted the scope of Gertz to actions against media defendants and actions involving public issues. See Dun & Bradstreet v. Greenmoss Builders, Inc., 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). In Dun & Bradstreet, the Court read Gertz 's requirement of actual damages narrowly and attributed the holding to the fact that the Court was forced to balance the defendant's First Amendment freedoms and the benefits of discussion of public issues against a state's right to regulate tort law. When the issues involved are not matters of public concern or the defendant is not a member of the media, the Court saw no constitutional reason to restrict plaintiff's recovery under state defamation law. Id. at 757-61, 105 S.Ct. at 2944.
 
 
 9
 Plaintiff argues that because Dun & Bradstreet has revealed Gobin to be a needlessly overbroad reading of Gertz, this court should "correct" the law in Kansas to reflect the Supreme Court's later decision. We disagree. The Supreme Court's decision in Dun & Bradstreet is purely permissive--it holds only that it is not unconstitutional to use presumed damages against nonmedia defendants or in cases that do not involve issues of public concern. The decision does not require the presumption of damages in all such cases as a constitutional matter. And the Kansas Supreme Court, although recognizing the opportunity in Turner v. Halliburton, 240 Kan. 1, 722 P.2d 1106 (1986), has declined to reexamine the scope of its Gobin holding. Id. 722 P.2d at 1115. Consequently, we reject plaintiff's contention that the jury instructions on the defamation claim were in error.
 
 II Retaliatory Discharge
 
 10
 Plaintiff alleges that the trial court erred in granting summary judgment to defendants on her state law retaliatory discharge claim. The court based its ruling on the Kansas employment-at-will doctrine, which it read to preclude tort damages for retaliatory discharge. Polson, 635 F.Supp. at 1149-50. Plaintiff argues that Murphy v. City of Topeka, 6 Kan.App.2d 488, 630 P.2d 186 (1981), created a public policy exception to the general rule that all employees are employed at will and may be discharged for no reason or for any reason whatsoever; and that this public policy exception is properly invoked in the instant case. We disagree, and hold that plaintiff's remedies under Kansas statutory law preclude recovery under the tort of wrongful discharge.
 
 
 11
 Murphy involved an employee who was fired because of his filing of a worker's compensation claim. The Kansas Court of Appeals held that to allow a worker to be fired for filing a claim would undermine the purpose of the program, which was to compensate workers in the most expeditious and efficient manner possible. Id. 630 P.2d at 192. Therefore, the court recognized a limited exception to the employment-at-will rule in the interest of validating the public policy embodied in the worker's compensation statutes. The public policy exception has been read by Kansas courts to cover retaliation for opposing illegal conduct of an employer, for exercising rights under labor-management relations statutes, for refusing to submit to polygraph examination, and for serving on a jury. See Coleman v. Safeway Stores, Inc., 242 Kan. 804, 752 P.2d 645, 648 (1988).
 
 
 12
 The federal district courts sitting in Kansas are split on whether the public policy exception should be extended to cover conduct like that at issue here, which allegedly transgresses the Kansas Acts Against Discrimination, Kan.Stat.Ann. Sec. 44-1001, et seq. (KAAD). In Wynn v. Boeing Military Airplane Co., 595 F.Supp. 727 (D.Kan.1984), Judge Theis concluded that the public policy exception should apply in cases in which a worker's termination is alleged to stem from conduct proscribed by KAAD. But Judges O'Connor and Rogers have held that the availability of remedies under the KAAD precludes expanding the remedies available at common law. Polson, 635 F.Supp. at 1149-50; Robinson v. Colt Indus. Operating Corp., No. 84-2471, slip op. at 7-8 (D.Kan. March 5, 1986) (opinions of Judge O'Connor); Tarr v. Riberglass, Inc., No. 83-4234, slip op. at 4-6, 1984 WL 1481 (D.Kan. February 3, 1984) (opinion of Judge Rogers).[2]
 
 
 13
 The issue is further clouded by recent Kansas Supreme Court cases regarding the scope of the public policy exception. Reversing the earlier case of Cox v. United Technologies, 240 Kan. 95, 727 P.2d 456 (1986), the court held that workers covered by collective bargaining agreements could bring tort actions against their employers for wrongful or retaliatory discharge if the circumstances of their discharge violated a public policy of the state. Coleman v. Safeway Stores, Inc., 242 Kan. 804, 752 P.2d 645, 651 (1988); see also Palmer v. Brown, 242 Kan. 893, 752 P.2d 685 (1988) (recognizing protection of "whistleblowers" under public policy exception). In deciding Coleman, the court focused on the inadequacy of arbitration to compensate employees for torts committed by employers. The Coleman holding, however, does not extend as far as Judge Theis' holding that the fact the various remedies might differ is sufficient to require recognition of a state common law remedy. Instead it appears that we must investigate the adequacy of the alternative remedy before classifying a situation as being under the public policy exception to the employment-at-will doctrine.
 
 
 14
 Faced with the need to decide, we believe, as did the district court, that the Kansas Supreme Court would adopt the view that KAAD provides an adequate and exclusive state remedy for violations of the public policy enunciated therein. Polson, 635 F.Supp. at 1150. There is no evidence that the remedies provided for in KAAD are constitutionally inadequate to compensate plaintiff, or so inadequate to enforce the stated public policy as to require bolstering by a common law cause of action. Thus, we hold the district court did not err in granting summary judgment on the retaliatory discharge claim.
 
 III Negligent Supervision
 
 15
 Plaintiff alleges, as a common law tort, that defendant City was negligent in supervising her immediate superior, defendant Davis, thereby allowing him to violate her civil rights. The district court granted summary judgment to defendants on this claim based on its conclusion that this cause of action does not exist in Kansas. Polson, 635 F.Supp. at 1151. Plaintiff has cited no cases, in Kansas or elsewhere, recognizing such a cause of action. She merely argues on logic that because the city has a duty not to discriminate, it also has a duty to properly supervise its agents.
 
 
 16
 We note that the Nebraska Supreme Court, when faced with the choice, declined to recognize negligent supervision as a common law tort. See Alford v. Life Savers, Inc., 210 Neb. 441, 315 N.W.2d 260 (1982). We also observe that this cause of action, once recognized, would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications.
 
 
 17
 This inventive cause of action appears to be nothing more than an attempt to circumvent the strictures of the employment-at-will doctrine by implying a duty that exposes higher level supervisors to liability for actions for which her immediate supervisors are not liable. We affirm the district court's entry of summary judgment on this issue.
 
 IV Title VII Violations as Sec. 1983 Claims
 
 18
 Plaintiff has asserted claims under 42 U.S.C. Sec. 1983, alleging that her termination violated her rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Title VII, 42 U.S.C. Sec. 2000e-2 et seq. Plaintiff's First Amendment claim was submitted to the jury, which returned a verdict for defendants. She does not appeal this decision. Her Title VII-based claim was rejected by the district court on the ground that the enforcement provisions expressly created in Title VII provide the exclusive remedy for employment discrimination suits premised solely on its violation. We agree. The precisely drawn, detailed enforcement structure of the later statute must be deemed to preempt the earlier general remedial statute. See Day v. Wayne County Bd. of Auditors, 749 F.2d 1199, 1203-04 (6th Cir.1984); cf. Brown v. General Services Administration, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (dismissing 42 U.S.C. Sec. 1981 claim because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment"); Preiser v. Rodriguez, 411 U.S. 475, 489, 500, 93 S.Ct. 1827, 1836, 1841, 36 L.Ed.2d 439 (1973) (federal prisoners may not bring Sec. 1983 action to challenge length of imprisonment due to availability of specific writ of habeas corpus remedies).
 
 
 19
 We also agree with the court below, however, that "a plaintiff may base a section 1983 claim on actions proscribed by Title VII where those actions also violate the United States Constitution." Polson, 635 F.Supp. at 1140. See, e.g., Grano v. Department of Dev., 637 F.2d 1073 (6th Cir.1980) (employee allowed to sue employer under both Title VII and Sec. 1983 when same employer conduct allegedly violated both Title VII and Fourteenth Amendment). Under ordinary circumstances this would require us to consider whether plaintiff has alleged a cognizable claim premised on the Equal Protection Clause. In this case, however, we see no need to do so. It is clear that the facts necessary to prove a violation of the Equal Protection Clause arising out of plaintiff's termination, if in fact that clause comprehends such a claim, are identical to the facts considered by the jury in deciding the plaintiff's First Amendment claim. Both claims ultimately turn on an issue of fact--whether Polson was terminated because she objected to discriminatory policies of defendants. The jury determined that she was not, and its conclusion necessarily resolves both claims. We therefore affirm the district court's directed verdict on this issue.
 
 V Defense Misconduct
 
 20
 Plaintiff alleges that two incidents of improper testimony inflamed the jury, depriving her of a fair trial, and that the district court erred in refusing to grant her a new trial. We view the district court's actions as proper in all respects and reject plaintiff's argument.
 
 
 21
 The decision whether misconduct in a trial has been so egregious as to require retrial is largely left to the discretion of the trial court. Our review on appeal is constrained by our ability to review only the written record and, thus, we give great deference to the district judge who observed the trial. We will reverse only for a clear abuse of discretion. Rodgers v. Hyatt, 697 F.2d 899, 901-02 (10th Cir.1983).
 
 
 22
 Plaintiff complains of two separate instances of improper testimony. In the first, defendant Davis testified that plaintiff allegedly stated to another individual, "I fornicate a lot." In the second instance, testimony was elicited regarding plaintiff's cohabitation with a local attorney. In both cases the district judge sustained objections to the remarks, and gave curative instructions to the jury. In addition, in the first instance the judge reprimanded the witness and defense counsel in front of the jury and offered a mistrial to the plaintiff, who rejected it, apparently for economic reasons.
 
 
 23
 We agree with the trial court that the statements made, given the curative instructions, did not deny substantial justice to the plaintiff sufficient to justify a new trial. Fed.R.Civ.P. 61; Beacham v. Lee-Norse, 714 F.2d 1010, 1014 (10th Cir.1983). Also, the plaintiff is barred by her earlier refusal of a mistrial from seeking a new trial on the basis of the "fornication" statement. See American Universal Ins. Co. v. Falzone, 644 F.2d 65, 67 (1st Cir.1981) (appellant may not object to improper argument following adverse decision where he voluntarily withdrew motion for mistrial); Computer Sys. Eng'g, Inc. v. Qantel Corp., 740 F.2d 59, 69 (1st Cir.1984) ("[A] party may not wait and see whether the verdict is favorable before deciding to object.").
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Neither party has alleged error in the district court's determination that both defendant Davis' discussion of the plaintiff's firing with other city employees, and plaintiff's own disclosure of the purported reasons for her firing to other prospective employers who inquired, constitute "publication" by the defendants for the purposes of defamation liability. See Polson, 635 F.Supp. at 1130
 
 
 [2]
 There appears to be no dispute, and we accept, that discharges in violation of KAAD are contrary to the public policy of the state. KAAD recites in its purpose section that it is "the policy of the state of Kansas to eliminate and prevent discrimination in all employment relations...." Kan.Stat.Ann. Secs. 44-1001. The dispute therefore centers around whether the remedies available under KAAD are exclusive