MEMORANDUM AND ORDER
 

 SAFFELS, Senior District Judge.
 

 This matter is before the court on the defendant’s Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial (Docs. 146 and 218). For the reasons set forth below, the court denies both motions.
 

 I. FACTUAL BACKGROUND
 

 Guillermo Sanjuan (“Sanjuan”) brought this action alleging that he was fired from his job at IBP, Inc. (“IBP”) in retaliation for exercising his statutory rights under the Kansas Workers’ Compensation Act, Kan.Stat.Ann. § 44-501,
 
 et. seq.
 

 Sanjuan began working as a flanker at IBP’s Holcomb, Kansas, plant in May 1991. In May 1992, Sanjuan visited the company nurse because he was experiencing pain in his left arm, shoulder and back. Sanjuan believed his pain was due to using an old air knife which was not cutting properly. He informed his supervisor at IBP about the knife, but IBP refused to replace it. In July 1992, Sanjuan saw the company doctor, who restricted plaintiff to “light duty” because plaintiff was suffering from repetitive motion overuse. Sanjuan’s supervisors were made aware of Sanjuan’s injury and his medical restrictions. From July 1992 until December 1992, IBP assigned Sanjuan to several “light duty” positions within the company, including labeling boxes, picking up garbage, stamping beef, driving cattle with cattle prods, and blowing hair off hocks. Sanjuan was brief
 
 *1210
 
 ly reinstated to his regular position as a flanker for a trial basis on October 2, 1999, but returned to light duty due to pain.
 

 Although Sanjuan had never been disciplined for poor job performance prior to his injury, he was written up ten times for disciplinary violations after he was placed on light duty. Many of the light duty jobs were easier than his flanker position. Supervisors refused to explain to Sanjuan, who spoke little English, the nature of alleged violations and forced him to sign documents acknowledging the violations. Sanjuan testified that his supervisors failed to train him and explain how to do the light duty jobs. Sanjuan also testified that his supervisors mistreated him by yelling at him, threatening him if he did not return to his regular job, and not allowing him to seek medical care. At trial, Sanjuan’s supervisors denied any mistreatment and said that Sanjuan was written up for mistakes he made on the job.
 

 On December 23, 1992, Sanjuan was driving cattle through a chute, using a cattle prod to keep the line moving. A cow fell down, causing the line to stop for five minutes. Sanjuan testified that the cow slipped and fell due to moisture in the chute. An IBP supervisor testified that he had seen cattle accidently slip in the chute, and that cattle entered the chute covered with snow and mud. IBP supervisors testified that Sanjuan over-shocked the cow, and had been warned about over-shocking cattle in the past. Sanjuan testified he had not been warned about over-shocking cattle. On . December 23, 1992, Sanjuan was fired from IBP for poor work performance.
 

 Sanjuan filed suit, alleging that IBP’s stated reason for discharge, poor work performance, was mere pretext, and IBP’s real reason for discharge was retaliation for filing a workers’ compensation claim. On May 10,1996, a jury returned a verdict in favor of the plaintiff, awarding the plaintiff $39,076 in actual damages. The defendant appealed to the Tenth Circuit, which ordered a new trial because the trial court improperly admitted hearsay. On July 13, 1999, a jury again returned a verdict in favor of the plaintiff. The second jury awarded $97,032 for past wages and $2,500 for embarrassment, humiliation and emotional distress, for a total award of $99,532. The second jury also found that defendant’s conduct was willful, wanton, and malicious, and the court awarded $200,000 in punitive damages.
 

 II. PROCEDURAL OBJECTIONS
 

 Plaintiff initially argues the court should deny defendant’s Renewed Motion for Judgment and Alternative Motion for a New Trial because they do not comply with D.Kan. Rule 7.6(a). Defendant’s motions sufficiently comply with the local rule to allow the court to clearly understand the nature of the matter before it.
 

 III. MOTION FOR JUDGMENT AS A MATTER OF LAW
 

 During the first trial, IBP defended against Sanjuan’s retaliation claim by arguing Sanjuan was discharged for poor work performance. Before the second trial commenced, the Kansas Court of Appeals decided
 
 Griffin v. Dodge City Coop. Exchange,.
 
 23 Kan.App.2d 139, 927 P.2d 958 (1996). In
 
 Griffin,
 
 the Kansas Court of Appeals stated, “an employee who cannot return to his or her former position does not have a retaliatory discharge claim.”
 
 Id.
 
 at 964. During the second trial, IBP argued that not only was San-juan discharged for poor work performance but he also could not claim retaliation because he was unable to perform his job as a flanker at the time he was discharged. The jury found that Sanjuan “could have returned to his regular position as a flanker,” and that IBP fired Sanjuan in retaliation.
 

 The court denied defendant’s motion for judgment as a matter of law at the close of the plaintiffs case and again at the close of all evidence. IBP renews its motion pur
 
 *1211
 
 suant to Fed.R.Civ.P. 50(b), and asks the court to set aside the jury’s finding that IBP discharged the plaintiff in retaliation. IBP argues that under
 
 Griffin
 
 an employee must be able to return to his former position without accommodation on the day he was discharged to maintain a retaliation claim and plaintiff did not meet his burden.
 

 Overturning a jury verdict is a judicial remedy that the court approaches with a great deal of caution. The court may grant a motion for judgment as a matter of law “only if the evidence, viewed in the light most favorable to the nonmoving party, ‘points but one way and is susceptible to no reasonable inferences supporting’ the nonmoving party.”
 
 Riggs v. Scrivner, Inc.,
 
 927 F.2d 1146, 1149 (10th Cir.1991). “[T]he court must view the evidence and indulge all inferences in favor of the party opposing the motion and ‘cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury.’ ”
 
 Lucas v. Dover Corp.,
 
 857 F.2d 1397, 1400 (10th Cir.1988). In short, judgment as a matter of law is proper only when “the evidence so strongly supports an issue that reasonable minds could not differ.”
 
 Ryder v. City of Topeka,
 
 814 F.2d 1412, 1418 (10th Cir.1987).
 

 “Retaliatory discharge is an intentional tort: it is committed ‘only when the employer discharges the employee for an improper reason.’ ”
 
 Bausman v. Interstate Brands Corp.,
 
 50 F.Supp.2d 1028, 1042 (D.Kan.1999). Kansas courts have determined that firing an employee for filing a workers’ compensation claim is improper.
 
 Murphy v. City of Topeka,
 
 6 Kan.App.2d 488, 630 P.2d 186, 192 (1981). The public policy embodied in Kansas workers’ compensation laws makes it unlawful for an employer to retaliate against an employee because he has filed a workers compensation claim.
 
 Id.
 

 The plaintiff bears the burden of proving retaliatory discharge by a preponderance of the evidence that is clear and convincing.
 
 Ortega v. IBP, Inc.,
 
 255 Kan. 513, 874 P.2d 1188, 1197-98 (1994). To succeed on a claim for retaliatory discharge, the plaintiff must show that: (1) he filed a claim for workers’ compensation benefits, or sustained an injury for which he might assert a claim for such benefits; (2) his employer had knowledge of the claim, or of the fact that he had sustained a work-related injury for which he might file a claim; (3) his employer terminated his employment; and (4) a causal connection existed between the protected activity or injury and the termination.
 
 Huffman v. Ace Elec. Co.,
 
 883 F.Supp. 1469, 1475 (D.Kan.1995). IBP would like this court to treat the
 
 Griffin
 
 statement as an additional element to a retaliation claim, requiring the employee to prove they could return to their former position within medical restrictions at the time they were discharged.
 

 The
 
 Griffin
 
 statement must be read within its context. At the time Griffin was discharged, he was diagnosed with degenerative disc disease and had been released from his doctor’s care with permanent medical restrictions.
 
 Griffin,
 
 927 P.2d at 961. Griffin brought a retaliatory discharge action because his employer did not modify his job or consider alternative jobs to accommodate his injury. The
 
 Griffin
 
 court stated:
 

 We do not read this language to require an employer to look for alternative work or create a position before terminating an injured employee who clearly cannot return to his prior position. While efforts to reemploy or retain injured workers should be encouraged, the Workers Compensation Act does not impose such an obligation on an employer. Likewise, our reading of
 
 [.Murphy
 
 ] and
 
 DColeman
 
 ] reinforce the view than an employee who cannot return to his or her former position does not have a retaliatory discharge claim.
 

 Id.
 
 at 964 (Emphasis added). Griffin was clearly unable to return to his former position, therefore, he could not establish the
 
 *1212
 
 improper motive necessary to maintain an action for retaliatory discharge.
 

 Implied in
 
 Griffin
 
 is the requirement there must be clear evidence that the employee can not return to his former position to foreclose a retaliatory discharge claim. An employer is not obligated to retain an injured employee who clearly can not return to his job.
 
 Id.
 
 The word “return” itself indicates that the plaintiff was off work, returning from a period of rest or rehabilitation. The cases relied on by the
 
 Griffin
 
 court,
 
 Murphy v. City of Topeka,
 
 and
 
 Coleman v. Safeway Stores, Inc.,
 
 242 Kan. 804, 752 P.2d 645 (1988), when read together, do not require that the employee be able to return to his former position within medical restrictions on the day he is discharged.
 

 In
 
 Murphy,
 
 the employee sustained a work-related injury and filed a workers’ compensation claim. His employer offered further employment upon the condition that he withdraw his workers’ compensation claim. When Murphy refused to withdraw his claim, he was terminated. The court recognized that Murphy had stated a cause of action for retaliatory discharge. The
 
 Murphy
 
 court quoted the district court opinion, which provided:
 

 [T]he court is of the opinion that for-an employer to intentionally and wrongfully fire a workman for filing a Workmen’s Compensation Claim and proceeding thereon, when said workman is unable to perform his work, is the basis for a claim in the tort and is contrary to the public policy of this state. This is not to say that an employee who is injured on the job and who has a Workmen’s Compensation Claim and is unable to perform the work as a result of the injury cannot be discharged.
 

 Murphy,
 
 630 P.2d at 188. Murphy’s injury did not prevent him from performing his job or cause him to miss work.
 

 Although
 
 Murphy
 
 can be read as supporting defendant’s interpretation of
 
 Griffin, Coleman
 
 can not. Coleman was unable to perform her job due to a work-related injury to her right arm in June 1984, and she underwent surgery in September 1984. During the time she was off work, her employer assessed infractions against her for failing to call in daily to report her absences pursuant to an attendance policy, even though she was under the care of the company doctor. Her employer terminated her due to violations of its attendance policy. The
 
 Coleman
 
 court held, “Allowing an employer to discharge an employee for being absent or failing to call in an anticipated absence as the result of a work-related injury would allow an employer to indirectly fire an employee for filing a workers’ compensation claim, a practice contrary to the public policy in this state.”
 
 Coleman,
 
 752 P.2d at 652. The court did not foreclose the opportunity to bring a retaliation claim simply because Coleman was unable to work during that temporary, three month period.
 

 The court does not read the opinions of
 
 Griffin
 
 or
 
 Coleman
 
 to require that an employee prove they were able to work within medical restrictions on the day they were discharged in order to maintain a retaliation claim. Such an exacting interpretation of
 
 Griffin
 
 would create a substantial loophole. An employer could terminate an injured employee the moment they are injured before it is determined whether they will be able to resume their pre-injury duties. Most injured workers are temporarily unable to perform their job due to physical trauma, medication, or hospitalization. The only injured workers that would be safe from employer retaliation would be those with minor injuries who could immediately return to their position. - It would be anomalous for this court to hold an employer may not fire an employee in retaliation for filing a workers’ compensation claim, and then to hold an employer can fire an employee for inability to return to his former job which is due to injuries that are the basis for the workers’ compensation claim.
 

 
 *1213
 
 This court does not believe that the Kansas Court of Appeals intended for the statement in
 
 Griffin
 
 to be used as a rubber stamp, allowing courts to summarily dismiss all retaliation claims in which the employee was unable to perform his job within medical restrictions on the day he was fired. The defendant cites a series of cases which use
 
 Griffin
 
 as a basis for dismissing retaliation claims. However, these cases involve employees who were fired only after a permanent injury was diagnosed or involve other distinguishable facts.
 
 See Rodriguez v. IBP, Inc.,
 
 No. 96-3159, 153 F.3d 728, 1998 WL 426797 (10th Cir. July 20, 1998) (stating “an employer should not be prohibited from discharging an employee who has already been compensated for a permanently and completely disabling injury”);
 
 Witherspoon v. Nash-Finch Co.,
 
 No. 97-3097,161 F.3d 19, 1998 WL 658357 (10th Cir. Sep.lo, 1998) (employee with permanent restrictions at the time of discharge did not have a retaliation claim.);
 
 Keeton v. Boeing, Co.,
 
 No. 95-1467-JTM, 1998 WL 227156 (D.Kan. Apr.23, 1998) (same);
 
 Barnard v. ADM Milling Co.,
 
 987 F.Supp. 1337, 1344-45 (D.Kan.1997) (employee discharged pursuant to absenteeism policy for twelve month absence had no retaliation claim);
 
 Heil v. Scholastic Book Fairs,
 
 Inc. No. 96-2514-JTV, 1997 WL 760497, (D.Kan. Nov.4, 1997) (plaintiff did not have a claim for retaliation because plaintiff was not “terminated”);
 
 Raymond,
 
 762 F.Supp. 901 (D.Kan.1991) (employee discharged pursuant to absenteeism policy for twelve month absence had no retaliation claim).
 
 But See Castro v. IBP, Inc.,
 
 1997 WL 624972 (D.Kan.1997) (employee with no medical restrictions at the time of discharge, who admitted that she could not perform her job, could not sustain a retaliation claim). In this case, Sanjuan had not been determined to have sustained a permanent injury at the time of discharge, and he was not discharged pursuant to a neutral absenteeism policy, but rather for poor work performance.
 

 The same protection afforded absent employees should be afforded those injured employees who elect to work light duty rather than sit at home. Before an injured employee can be terminated, there must be clear evidence that the injured worker will be unable to perform his former job. If the employee clearly can not return to his former position, then there is no evidence of an improper retaliatory motive. However, absent clear evidence, the employer must give the injured employee time to recover. “Where an employer terminates an injured employee after only a brief period for recovery has elapsed, courts have generally found the employee has stated a cognizable cause of action.”
 
 [1]
 

 Raymond v. Archer Daniels Midland Co.,
 
 762 F.Supp. 901, 905, n. 6 (D.Kan.1991) (citing
 
 Horn v. Davis Elec. Constructors, Inc.,
 
 302 S.C. 484, 395 S.E.2d 724, 727 (App.Ct.1990), which held ten days was not a reasonable period of time to allow the employee, who was not permanently-totally disabled, to demonstrate his ability to return to work).
 
 See Powell v. Wyoming Cablevision, Inc.,
 
 184 W.Va. 700, 403 S.E.3d 717 (1991) (holding injured employee, who was terminated four months after injury, could maintain a retaliation claim).
 

 Under the facts of this case, IBP terminated Sanjuan after only a brief pen
 
 *1214
 
 od of time for recovery had elapsed. Plaintiff first saw the doctor in July 1992 and was discharged in December 1992. The doctor’s report indicates Sanjuan’s injuries were not so severe as to prevent him from returning to his flanker position in the foreseeable future. On October 2, 1992, the doctor returned Sanjuan to his flanker position for a trial period. IBP presented no evidence that at the time Sanjuan was fired his injuries were permanent or that he clearly could not have returned to his position as a flanker. The jury specifically found that the plaintiff could have returned to his former position as a flanker. The jury considered this issue in detail, as evidenced by their question to the court, “Could we have a brief description of what the flanker job does?”. The evidence supported the jury’s finding that Sanjuan could have returned to his former position as a flanker. Given the circumstances surrounding this case, the period of recovery was sufficiently brief to allow the question of retaliation to go to a jury-
 

 Plaintiff argues that
 
 Griffin
 
 should not apply to his case because he was terminated due to poor work performance, not inability to return to his former position, and he did not seek other remedies in reliance upon IBP’s representation that he was fired due to poor work performance. Under this court’s interpretation of
 
 Griffin, Griffin
 
 applies in every retaliation claim because a plaintiff who clearly can not return to their former position at the time of discharge can not establish the improper motive necessary to sustain a retaliation claim. Absent clear evidence, the employer must give the employee a sufficient period of time to demonstrate their ability to return to work. If the employer only gives the employee a brief period of time, the question of whether the employer acted with an improper motive is properly placed before a jury.
 

 IBP next argues that Sanjuan failed to prove retaliatory motive or a causal connection between his injury and his termination. The jury rejected IBP’s stated reason for termination, which was poor work performance. At trial, the plaintiff showed that he was not disciplined for poor job performance until after his injury. After his injury, Sanjuan incurred ten disciplinary violations, some of which involved mistakes at jobs that were of less difficulty than his regular position. “Close proximity in time may provide some probative evidence of retaliatory intent.”
 
 Sanjuan v. IBP, Inc.,
 
 160 F.3d 1291, 1299 (10th Cir.1998). Sanjuan also described mistreatment by supervisors which included harassing remarks, threats, improper training and refusing to allow Sanjuan to seek medical treatment. IBP also had accident-free incentive programs in place which could be construed as encouraging retaliation. The court concludes that there was sufficient evidence for the jury to find that Sanjuan suffered retaliatory discharge.
 

 IY. MOTION FOR A NEW TRIAL
 

 Where there has been a trial by jury, Fed.R.Civ.P. 59(a) permits the court to grant a new trial “for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.” Motions for new trial are committed to the sound discretion of the trial court.
 
 McDonough Power Equip., Inc. v. Greenwood,
 
 464 U.S. 548, 550, 104 S.Ct. 845, 78 L.Ed.2d 668 (1984). “A new trial is not in order unless the court finds that prejudicial error has entered the record or that substantial justice has not been done.”
 
 Johnson v. Colt Indus. Operating Corp.,
 
 609 F.Supp. 776, 779 (D.Kan.1985). “Neither an error in the admission or exclusion of evidence nor an error in a ruling or order of the court, nor anything done or omitted by the court, can be grounds for granting a new trial unless the error or defect affects the substantial rights of the parties.”
 
 Courtney v. Safelite Glass Corp.,
 
 811 F.Supp. 1466, 1471 (D.Kan.1992).
 

 
 *1215
 
 Defendant first contends that jury Instruction 9 and Question 1 on the verdict form resulted in prejudicial error because they did not refer to the relevant time period, medical restrictions, or accommodation. The verdict form question given, which corresponded to Instruction 9, provided, “Do you find that Guillermo Sanjuan could have returned to his regular position as a flanker.” The requested question provided, “Do you find that on 12-23-92, the day he was discharged, plaintiff Guillermo Sanjuan could have returned to his regular position as a flanker, without assistance or modification to the job, within his medical restrictions.”
 

 As discussed above, the focus of
 
 Griffin
 
 is whether the employee clearly could not return to his job at the time he was discharged. The jury found that Sanjuan could have returned to his position as a flanker. The question itself was phrased in past tense. The jury instructions read as a whole point to the relevant time period— the time of discharge. The court finds Instruction 9 and Question 1 were adequate and did not result in prejudice to the defendant.
 

 Defendant argues jury Instruction 7 on clear and convincing evidence resulted in prejudicial error. The court gave the following instruction:
 

 [T]he plaintiff has the burden of proving by clear and convincing evidence that he was discharged for exercising rights under the Workers Compensation Act. To be clear and convincing, evidence should be “clear” in the sense that it is certain, plain to the understanding, and unambiguous, and “convincing” in the sense that it is so reasonable and persuasive as to cause you to believe it.
 

 This language is identical to the language recommended in the Pattern Instruction for Kansas 3d, PIK 102.11. This is also the standard of proof for retaliatory discharge announced in the Kansas Supreme Court decision of
 
 Ortega v. IBP, Inc.,
 
 874 P.2d at 1198. The standard was repeated in Instruction 15, and referenced in Instruction 16.
 

 The defendant requested that the court include the following language from
 
 Nord-strom v. Miller,
 
 227 Kan. 59, 605 P.2d 545, 552 (1980):
 

 The witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the transaction must be narrated exactly and in order; the testimony must be clear, direct and weighty; and the witnesses must be lacking in confusion as to the facts at issue.
 

 However, defendant cites no case law to support its position that this language is necessary to avoid prejudice. The burden of proof instruction correctly stated Kansas law and was sufficient to guide the jury in its deliberations.
 

 IBP next claims it was prejudicial error not to instruct the jury on the statutory definition of temporary total disability. IBP presented evidence of a demand letter from an attorney requesting temporally total disability compensation and a workers’ compensation form in which the plaintiff claimed to be entitled to temporary total disability benefits. IBP claims the jury should have been instructed on temporary total disability “so they could fully understand the significance of plaintiffs representations in his workers compensation litigation.”
 

 At trial, Sanjuan testified that he never claimed to be totally disabled. Sanjuan said he did not understand the meaning of the workers’ compensation forms which had been filled out by his workers’ compensation attorney. IBP cross-examined Sanjuan regarding these documents. The jury had this evidence during deliberations. IBP has not demonstrated how it was prejudiced, and the court finds that IBP was not prejudiced by the lack of a jury instruction on temporary total disability.
 

 
 *1216
 
 The defendant next argues it was prejudicial error to admit evidence of IBP’s accident prevention programs and self-insured status as pattern and practice evidence. After the first trial, the Tenth Circuit held that evidence of IBP’s accident prevention programs was relevant to “IBP’s motivation to discourage the reporting of injuries and/or reduce the cost of injuries.”
 
 Sanjuan v. IBP, Inc.,
 
 160 F.3d 1291,1298 (10th Cir.1998). The court finds that the accident prevention programs are just as relevant to IBP’s motive in the second trial as in the first trial, and defendant was not prejudiced by this evidence.
 

 Likewise, the court finds that evidence of IBP’s self-insured status is relevant to whether IBP was motivated to discourage reporting and/or reduce the cost of injuries. Under Kansas law, an employer may be self-insured.
 
 See
 
 Kan. StatAnn. § 44-559a(f). There is nothing illegal or improper about being self-insured. However, if a defendant’s self-insured status provides an incentive to fire employees in retaliation to save money, the evidence is admissible. IBP had an opportunity to present evidence that its self-insured status did not encourage retaliation. IBP was not prejudiced by this evidence.
 

 Finally, IBP argues it was prejudicial error for the court to deny its motion to compel plaintiff to sign a release for social security records. IBP requested that the plaintiff sign a consent form fourteen days before trial. Sanjuan refused to sign the consent on June 23,1999, claiming that the Social Security records request was untimely and not included in IBP’s discovery requests. The defendant did not file a motion to compel until June 29, 1999, the day before trial. The deadline for discovery had expired, and IBP never sought to reopen discovery. IBP had more than three years to request the social security records, but chose to submit its request on the eve of the second trial. Any prejudice suffered by IBP is a direct result of IBP’s own neglect to get their request before the court in a timely manner.
 

 When the parties argued the motion before the court on June 30, 1999, the day of trial, David 0. Allegria, attorney for Sanjuan, stated, “I’ll proffer to the court that Mr. Sanjuan has never applied for social security.” (Trans.12-13) Mr. Allegria made this statement as an officer of the court. Mr. Allegria’s statement combined with the fact that the defendant has not produced any evidence that Sanjuan ever filed for social security benefits or that IBP has reason to believe he filed for social security benefits makes it highly unlikely that defendant suffered prejudice.
 

 IT IS THEREFORE BY THE COURT ORDERED that the defendant’s Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial (Docs. 146 and 218) are denied.
 

 [1]
 

 . The court recognizes that this period of recovery is not unlimited. For example, courts have limited the rule in
 
 Coleman,
 
 which prevents an employer from discharging an employee for being absent or failing to call in an anticipated absence due to work-related injury. Courts have held that discharging an employee for violations of a twelve month absenteeism policy and six month absenteeism policy is not evidence of an improper motive.
 
 See Barnard, v. ADM Milling Compa
 
 ny, 987 F.Supp. 1337, 1341 (D.Kan.1997) (twelve month absence);
 
 Rosas v. IBP, Inc., 869
 
 F.Supp. 912, 917 (D.Kan.1994) (fourteen month absence);
 
 Raymond v. Archer Daniels Midland Co.,
 
 762 F.Supp. 901, 905 (D.Kan. 1991) (twelve month absence);
 
 Rowland v. Val-Agri, Inc.,
 
 13 Kan.App.2d 149, 766 P.2d 819, 822 (1988) (six month absence). What is considered a sufficient period of recovery can only be determined on a case by case basis.